**Steven D. Olson**, OSB No. 003410
  Direct Dial:  503.802.2159
  Fax:  503.972.3859
  E-Mail:  steven.olson@tonkon.com
**Paul W. Conable**, OSB No. 975368
  Direct Dial:  503.802.2188
  Fax:  503.972.3888
  E-Mail:  paul.conable@tonkon.com

**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

        Attorneys for Plaintiff
        Leif's Auto Collision Centers, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### (Portland Division)

| | |
|---|---|
| **LEIF'S AUTO COLLISION CENTERS, LLC, an Oregon limited liability company dba LEIF'S AUTO COLLISION CENTERS ,**<br><br>            Plaintiff,<br><br>    v.<br><br>**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY OF OREGON, STATE FARM FIRE AND CASUALTY COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ESURANCE INSURANCE COMPANY, PROGRESSIVE** | Civil No.<br><br><br>**COMPLAINT**<br>**(Antitrust)**<br><br>**(*JURY TRIAL DEMANDED*)** |

PAGE 1 -   COMPLAINT

NORTHWESTERN INSURANCE COMPANY,
PROGRESSIVE DIRECT INSURANCE
COMPANY, PROGRESSIVE ADVANCED
INSURANCE COMPANY, PROGRESSIVE
CASUALTY INSURANCE COMPANY,
PROGRESSIVE CLASSIC INSURANCE
COMPANY, PROGRESSIVE MAX
INSURANCE COMPANY, PROGRESSIVE
NORTHERN INSURANCE COMPANY,
PROGRESSIVE PREFERRED INSURANCE
COMPANY, PROGRESSIVE SPECIALTY
INSURANCE COMPANY, PROGRESSIVE
WEST INSURANCE COMPANY,
PROGRESSIVE UNIVERSAL INSURANCE
COMPANY, GEICO GENERAL INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO CASUALTY COMPANY, AMERICAN
FAMILY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE
COMPANY, LIBERTY INSURANCE
CORPORATION, LM GENERAL INSURANCE
COMPANY, LM INSURANCE
CORPORATION, SAFECO INSURANCE
COMPANY OF AMERICA, SAFECO
INSURANCE COMPANY OF OREGON,
UNITED SERVICE AUTOMOBILE
ASSOCIATION, USAA CASUALTY
INSURANCE COMPANY, USAA GENERAL
INDEMNITY COMPANY, MUTUAL OF
ENUMCLAW INSURANCE COMPANY,
ENUMCLAW PROPERTY AND CASUALTY
INSURANCE COMPANY, NATIONWIDE
AFFINITY INSURANCE COMPANY OF
AMERICA, NATIONWIDE INSURANCE
COMPANY OF AMERICA, NATIONWIDE
MUTUAL INSURANCE COMPANY,
HARTFORD ACCIDENT AND INDEMNITY
COMPANY, HARTFORD CASUALTY
INSURANCE COMPANY, HARTFORD FIRE
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE MIDWEST,
HARTFORD UNDERWRITERS INSURANCE
COMPANY, PROPERTY AND CASUALTY
INSURANCE COMPANY OF HARTFORD,
METROPOLITAN CASUALTY INSURANCE

**COMPANY, METROPOLITAN DIRECT
PROPERTY AND CASUALTY INSURANCE
COMPANY, METROPOLITAN PROPERTY
AND CASUALTY INSURANCE COMPANY,
THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY, TRAVELERS
COMMERCIAL INSURANCE COMPANY,
OREGON MUTUAL INSURANCE COMPANY,
PEMCO MUTUAL INSURANCE COMPANY,
GRANGE INSURANCE ASSOCIATION,
COUNTRY CASUALTY INSURANCE
COMPANY, COUNTRY MUTUAL
INSURANCE COMPANY, COUNTRY
PREFERRED INSURANCE COMPANY,
CALIFORNIA CASUALTY GENERAL
INSURANCE COMPANY OF OREGON,
AMICA MUTUAL INSURANCE COMPANY,
HORACE MANN INSURANCE COMPANY,
HORACE MANN PROPERTY & CASUALTY
INSURANCE COMPANY, FARMERS
INSURANCE COMPANY OF OREGON,
AMERICAN COMMERCE INSURANCE
COMPANY, OREGON MUTUAL INSURANCE
COMPANY, AMERICAN NATIONAL
PROPERTY AND CASUALTY COMPANY,
ZURICH AMERICAN INSURANCE
COMPANY OF ILLINOIS, VIKING
INSURANCE COMPANY OF WISCONSIN,
WAWANESA GENERAL INSURANCE
COMPANY, SUBLIMITY INSURANCE
COMPANY, OMNI INSURANCE COMPANY,
AND UNIGARD INSURANCE COMPANY,**

Defendants.

COMES NOW, the above-captioned Plaintiff, pursuant to the Federal Rules of

Civil Procedure and other applicable authority and files this, its Complaint against the above-

captioned Defendants, and in support thereof, states the following:

Where the term "Defendants" is used within this Complaint, it is intended to and

does mean and include each and every Defendant named in the caption above.

PAGE 3 -   COMPLAINT

## PARTIES

1.       Plaintiff Leif's Collision Center LLC, is an Oregon Limited Liability

Company authorized to do business within the State of Oregon, with its primary location at

14344 SW 72nd Ave, Tigard, Oregon 97224.  Leif's Collision Center, LLC, also operates

collision repair facilities at 14344 SW 72nd Avenue, Tigard, Oregon, 97224; 18485 SW TV

Highway, Beaverton, Oregon 97006; 8101 NE Glisan Street, Portland Oregon 972131; 8410 SE

McLoughlin Boulevard, Milwaukie, Oregon 97027 and 101 E. 1st Street, Newberg, Oregon

97132.

2.       Defendant State Farm Mutual Automobile Insurance Company is a mutual

company registered with the Oregon Insurance Division to do business within the state of

Oregon whose headquarters is located at One State Farm Plaza, Bloomington, Illinois 61710.

This defendant may be served through its designated agent for service of process, Mr. Bob

Roach, 550 Hawthorne Avenue SE, Salem, Oregon 97301.

3.       Defendant State Farm Fire and Casualty Company is a mutual company

registered with the Oregon Insurance Division to do business within the state of Oregon whose

headquarters is located at One State Farm Plaza, Bloomington, Illinois 61710. This defendant

may be served through its designated agent for service of process, Mr. Bob Roach, 550

Hawthorne Avenue SE, Salem, Oregon 97301.

4.       Defendants Allstate Fire and Casualty Insurance Company is an Illinois

insurance company registered with Oregon Insurance Division to do business and is doing

business in the state of Oregon and whose headquarters is located at 2775 Sanders Road STE

H1E, Northbrook, Illinois 60062.  This defendant may be served through its designated agent for

service of process, CT Corporation System, 388 State Street Suite 420, Salem OR 97301.

PAGE 4 -   COMPLAINT

5.     Defendant Allstate Insurance Company is an Illinois insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located 3075 Sanders Road, Northbrook, IL . This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

6.     Defendant Allstate Property and Casualty Insurance Company is an Illinois insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 3075 Sanders Road, Northbrook, IL. 3075. This defendant may be served through its designated agent for service of process CT Corporation System, 388 State Street Suite 420, Salem OR, 97301.

7.     Defendant Allstate Indemnity Company is an Illinois insurance company registered with the Oregon Insurance Division to do business and is doing business within the State of Oregon whose corporate headquarters is located at 3075 Sanders Road STE H1E, Northbrook, IL, 60062. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

8.     Defendant Esurance Insurance Company is a Wisconsin insurance company registered with the Oregon Insurance Division to do business and is doing business within the State of Oregon whose corporate headquarters is located at 650 Davis Street, San Francisco, CA 94111. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301.

9.     Defendant Progressive Northwestern Insurance Company is an Ohio insurance company registered with Oregon Insurance Division to do business within the state of Oregon and whose headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH,

PAGE 5 -   COMPLAINT

44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301.

10.     Defendant Progressive Direct Insurance Company is an Ohio insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301.

11.     Defendant Progressive Advanced Insurance Company is an Ohio insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301.

12.     Defendant Progressive Casualty Insurance Company is an Ohio insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301.

13.     Defendant Progressive Classic Insurance Company is a Wisconsin insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street, Suite 420, Salem, OR

PAGE 6 -   COMPLAINT

97301.

14.     Defendant Progressive Max Insurance Company is an Ohio insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, 5260 Western Ave., Chevy Chase, MD 20815. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

15.     Defendant Progressive Northern Insurance Company is a Wisconsin insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301.

16.     Defendant Progressive Preferred Insurance Company is an Ohio insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

17.     Defendant Progressive Specialty Insurance Company is an Ohio insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for

service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

18.     Defendant Progressive West Insurance Company is an Ohio insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301.

19.     Defendant Progressive Universal Insurance Company is an insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 6300 Wilson Mills Road, W33, Cleveland, OH, 44143. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

20.     Defendants Geico General Insurance Company is a Maryland insurance company registered with the Oregon Insurance Division to and is do business within the state of Oregon whose corporate headquarters is located at One Geico Plaza, Washington, DC 20076-0001. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

21.     Defendant Geico Indemnity Company is a Maryland insurance company registered with the Oregon Insurance Division to do business in and is doing business within the state of Oregon whose corporate headquarters is located at One Geico Plaza, Washington, DC 20076-0001. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

22.     Defendant Geico Casualty Company is an insurance company registered with the Oregon Insurance Division to do business in and is doing business within the state of

PAGE 8 -   COMPLAINT

Oregon whose corporate headquarters is located at One Geico Plaza, Washington, DC 20076-0001. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

23.    Defendant American Family Mutual Insurance Company is a Wisconsin mutual insurance company registered with the Oregon Insurance Division and is doing business within the state of Oregon whose corporate headquarters is located at 6000 American Parkway, Madison, WI, 53783. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301.

24.    Defendant Liberty Mutual Fire Insurance Company is a Wisconsin insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 175 Berkeley Street, Boston, MA, 02117. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301.

25.    Defendant Liberty Insurance Corporation is an Illinois corporation registered with the Oregon Insurance Division to do business within the State of Oregon and whose headquarters is located at 175 Berkeley Street, Boston, MA 02117.  This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301.

26.    Defendant LM General Insurance Company is an Illinois insurance company registered with the Oregon Insurance Division to do business within the State of Oregon and whose headquarters is located at 175 Berkeley Street, Boston, MA 02117.  This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301.

PAGE 9 -   COMPLAINT

27.     Defendant LM Insurance Corporation is an Illinois corporation registered with the Oregon Insurance Division to do business within the State of Oregon and whose headquarters is located at 175 Berkeley Street, Boston, MA 02117.  This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301.

28.     Defendant Safeco Insurance Company of America is a New Hampshire insurance company registered with the Oregon Insurance Division to do business within the state of Oregon whose headquarters is located at 175 Berkeley Street, Boston, Ma, 02116. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301.

29.     Defendant Safeco Insurance Company of Oregon is an Oregon insurance company registered with the Oregon Insurance Division to do business within the state of Oregon whose headquarters is located at 175 Berkeley Street, Boston, Ma, 02116. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301.

30.     Defendant United Services Automobile Association is a Texas insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 9800 Fredericksburg Road, San Antonio, TX, 78288. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

31.     Defendant USAA Casualty Insurance Company is a Texas insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 9800 Fredericksburg Road,

PAGE 10 - COMPLAINT

San Antonio, TX, 78288. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

      32.    Defendant USAA General Indemnity Company is a Texas insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 9800 Fredericksburg Road, San Antonio, TX, 78288. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

      33.    Defendant Mutual of Enumclaw Insurance Company is a Washington insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 1460 Wells Street, Enumclaw, WA, 98022.  This defendant may be served through its designated agent for service of process, Becky Sellers, 4000 Kruse Way PL, Bldg. 3 #200, Lake Oswego, OR 97035.

      34.    Defendant Enumclaw Property and Casualty Insurance Company is a Washington insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 1460 Wells Street, Enumclaw, WA, 98022.This defendant may be served through its designated agent for service of process, Becky Sellers, 4000 Kruse Way PL, Bldg. 3 #200, Lake Oswego, OR 97035.

      35.    Defendant Nationwide Affinity Insurance Company of America is an Ohio insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One West Nationwide Blvd., Columbus, OH 43215. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty ST NE, Salem, OR

PAGE 11 - COMPLAINT

97301.

36.     Defendant Nationwide Insurance Company of America is a Wisconsin insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One West Nationwide Blvd., Columbus, OH 43215. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty ST NE, Salem, OR 97301.

37.     Defendant Nationwide Mutual Insurance Company is an insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Nationwide Plaza, Columbus, OH 43215. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty ST NE, Salem, OR 97301.

38.     Defendant Hartford Accident and Indemnity Company is a Connecticut insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Hartford Plaza, Hartford, CT 06155. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

39.     Defendant Hartford Casualty Insurance Company is an Indiana insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Hartford Plaza, Hartford, CT 06155. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

40.     Defendant Hartford Fire Insurance Company is a Connecticut insurance

PAGE 12 - COMPLAINT

company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Hartford Plaza, Hartford, CT 06155. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

41.    Defendant Hartford Insurance Company of The Midwest is an Indiana insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Hartford Plaza, Hartford, CT 06155. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

42.    Defendant Hartford Underwriters Insurance Company is a Connecticut insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Hartford Plaza, Hartford, CT 06155. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

43.    Defendant Property and Casualty Insurance Company of Hartford is an Indiana insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Hartford Plaza, Hartford, CT 06155. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

44.    Defendant Metropolitan Casualty Insurance Company is a Rhode Island insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 700 Quaker Lane, P.O. Box 350, Warwick, RI 02886. This defendant may be served through its designated agent

for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301

45.    Defendant Metropolitan Direct Property and Casualty Insurance Company is a Rhode Island insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 700 Quaker Lane, P.O. Box 350, Warwick, RI 02886. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR 97301.

46.    Defendant Metropolitan Property and Casualty Insurance Company is a Rhode Island insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 700 Quaker Lane, P.O. Box 350, Warwick, RI 02886. This defendant may be served through its designated agent for service of process, CT Corporation System, 388 State Street Suite 420, Salem, OR.

47.    Defendant The Travelers Home and Marine Insurance Company is a Connecticut insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Tower Square, Hartford, CT 06183. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street Ne Suite 370, Salem, OR 97301.

48.    Travelers Commercial Insurance Company is a Connecticut insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at One Tower Square, Hartford, CT 06183. This defendant may be served through its designated agent for service of

PAGE 14 - COMPLAINT

process, Corporation Service Company, 285 Liberty Street Ne Suite 370, Salem, OR 97301.

49.     Defendant Oregon Mutual Insurance Company is an Oregon insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at P.O. Box 808, McMinnville, OR 97128. This defendant may be served through its designated agent for service of process, Mr. Steven L Patterson, 400 NE Baker Street, McMinnville, OR 97128.

50.     Defendant Pemco Mutual Insurance Company is a Washington mutual insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at P.O. BOX 778, Seattle, WA 98109. This defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301.

51.     Defendant Grange Insurance Association is a Washington insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at 200 Cedar Street, Seattle, WA 98121. This defendant may be served through its designated agent for service of process, CT Corporation System, 338 State Street Suite 420, Salem, OR 97301.

52.     Defendant Country Casualty Insurance Company is an Illinois insurance company registered with the Oregon Insurance Division to do business and is doing business within the state of Oregon whose corporate headquarters is located at P.O. Box 2100 Bloomington, IL 61702. This defendant may be served through its designated agent for service of process, CT Corporation System,338 State Street, Suite 420, Salem, OR 97301.

53.     Defendant Country Mutual Insurance Company is an Illinois mutual insurance company registered with the Oregon Insurance Division to do business and is doing

PAGE 15 - COMPLAINT

business within the state of Oregon whose corporate headquarters is located at P.O. Box 2100

Bloomington, IL 61702. This defendant may be served through its designated agent for service

of process, CT Corporation System, 338 State Street, Suite 420, Salem, OR 97301.

54.     Defendant Country Preferred Insurance Company is an Illinois insurance

company registered with the Oregon Insurance Division to do business and is doing business

within the state of Oregon whose corporate headquarters is located at P.O. Box 2100

Bloomington, IL 61702. This defendant may be served through its designated agent for service

of process, CT Corporation System, 338 State Street, Suite 420, Salem, OR 97301.

55.     Defendant California Casualty General Insurance Company of Oregon is

an Oregon insurance company registered with the Oregon Insurance Division to do business and

is doing business within the state of Oregon whose corporate headquarters is located at P.O. Box

M, San Mateo, CA 94402. This defendant may be served through its designated agent for service

of process, , Registered Agent Solutions Inc., 9130 SW Beaverton-Hillsdale Hwy, Portland OR

97225.

56.     Defendant Amica Mutual Insurance Company  is a Rhode Island mutual

insurance company registered with the Oregon Insurance Division to do business and is doing

business within the state of Oregon whose corporate headquarters is located at P.O. Box 6008,

Providence, RI 02940. This defendant may be served through its designated agent for service of

process, Mr. Scott R. Berard, 5665 SW Meadows Road Suite 250, Lake Oswego, OR 97035.

57.     Defendant Horace Mann Insurance Company is an Illinois insurance

company registered with the Oregon Insurance Division to do business within the State of

Oregon and is doing business within the State of Oregon and whose corporate headquarters is 1

Horace Mann Plaza, Springfield Illinois 62715.   Defendant may be served through its designated

PAGE 16 - COMPLAINT

agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, Oregon 97301.

58.     Defendant Horace Mann Property & Casualty Insurance Company is an Illinois insurance company registered with the Oregon Insurance Division to do business within the State of Oregon and is doing business within the State of Oregon and whose corporate headquarters is 1 Horace Mann Plaza, Springfield Illinois 62715.   Defendant may be served through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, Oregon 97301.

59.     Defendant Farmers Insurance Company of Oregon is an insurance company registered with the Oregon Insurance Division to do business within the state of Oregon and is doing business within the State of Oregon, and whose headquarters is located at 23175 NW Bennett Street, Hillsboro, OR 97124. This defendant may be served  through its designated agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR 97301

60.     Defendant American Commerce Insurance Company is an Ohio insurance company registered with the Oregon Insurance Division to do business within the State of Oregon and is doing business within the state of Oregon whose corporate headquarters is 3590 Twin Creeks Drive, Columbus, OH 43204.  This Defendant may be served through its designated agent for service of process, Mr. Tom Kranovich, 5 Centerpointe Drive Suite 400, Lake Oswego, OR 97035.

61.     Defendant Oregon Mutual Insurance Company is an Oregon mutual insurance company registered with the Oregon Insurance Division to do business within the State of Oregon and is doing business within the State of Oregon whose corporate headquarters is PO

PAGE 17 - COMPLAINT

BOX 808, McMinnville, OR 97128. This Defendant may be served through its designated agent

for service of process, Mr. Steven L Patterson, 400 NE Baker Street, McMinnville, OR 97128.

62.     American National Property and Casualty Company is a Missouri

insurance company registered with the Oregon Insurance Division to do business within the State

of Oregon and is doing business within the State of Oregon whose corporate headquarters is

Corporate Centre, 1949 E. Sunshine, Springfield MO 65899. This Defendant may be served

through its designated agent for service of process, CT Corporation System, 388 State Street,

Suite 420 Salem, Oregon 97301.

63.     Defendant Zurich American Insurance Company of Illinois is an Illinois

insurance company registered with the Oregon Insurance Division to do business within the State

of Oregon and is doing business within the State of Oregon whose corporate headquarters is

1400 American Lane, Schaumberg, Illinois 60196. This Defendant may be served through its

designated agent for service of process, Corporation Service Company, 285 Liberty Street NE,

Salem, Oregon 97301.

64.     Defendant Viking Insurance Company of Wisconsin is a Wisconsin

insurance company registered with the Oregon Insurance Division to do business within the State

of Oregon and is doing business within the State of Oregon and whose corporate headquarters is

1800 North Point Drive, Stevens Point, WI 54481. This Defendant may be served through its

designated agent for service of process, CT Corporation System, 388 State Street, Suite 420

Salem, Oregon 97301.

65.     Wawanesa General Insurance Company is a California insurance company

registered with the Oregon Insurance Division to do business within the State of Oregon and is

doing business within the State of Oregon and whose corporate headquarters is 9050 Friars

PAGE 18 - COMPLAINT

Road, Ste 101, San Diego, CA 92108. This Defendant may be served through its designated

agent for service of process, CT Corporation System, 388 State Street, Suite 420 Salem, Oregon

97301.

66.     Defendant Sublimity Insurance Company is an Oregon insurance company

registered with the Oregon Insurance Division to do business within the State of Oregon and is

doing business within the State of Oregon and whose corporate headquarters is P.O. 219,

Sublimity, OR 97385. This Defendant may be served through its designated agent for service of

process, G. Richer Budke, 100 SW Sublimity Boulevard, Sublimity, Oregon 97385.

67.     Defendant Omni Insurance Company is an Illinois insurance company

registered with the Oregon Insurance Division to do business within the State of Oregon and is

doing business within the State of Oregon and whose corporate headquarters is 1862 Charter

Lane, Ste. 102, Lancaster, PA 17601. This Defendant may be served through its designated

agent for service of process, Corporation Service Company, 285 Liberty Street NE, Salem, OR

97301.

68.     Defendant Unigard Insurance Company is a Wisconsin insurance

company registered with the Oregon Insurance Division to do business within the State of

Oregon and is doing business within the State of Oregon and whose corporate headquarters is

One General Drive, Sun Prairie, WI 53596.     This Defendant may be served through its

designated agent for service of process, CT Corporation System, 388 State Street, Suite 420

Salem, Oregon 97301.

## JURISDICTION AND VENUE

69.     Original jurisdiction and venues exists in this Court pursuant to 28 U.S.C.

§ 1331, as the Plaintiff asserts causes of action arising under the laws of the United States; and

PAGE 19 - COMPLAINT

pursuant to 28 U.S.C. § 1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTS

70.    Plaintiff is in the business of recovery and/or repair of motor vehicles involved in collisions at each of its five locations within the State of Oregon.

71.    Each individual Defendant is an insurer providing automobile policies to consumers throughout the state of Oregon.

72.    The Plaintiff has done business at its locations at various times over the course of years with the Defendants' policyholders and claimants by providing to these policyholders and claimants motor vehicle collision repair service. Each Defendant is individually responsible for payment for those repairs for their respective policyholders and claimants.

73.    On information and belief, over the course of several years, the Defendants have engaged in an ongoing, concerted and intentional course of action and conduct with State Farm acting as the spearhead to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiff and the substantial profit of the Defendants.

74.    One of the methods by which the Defendants exert control over body shops is by way of entering program agreements with body shops. Although each Defendant's program agreements have unique titles, such agreements are known generally and generically within the collision repair industry as direct repair program agreements ("DRPs").

75.    DRPs were presented to body shops as a mutually beneficial opportunity. In exchange for providing certain concessions of price, priority and similar matters, the

PAGE 20 - COMPLAINT

individual Defendants would list a body shop as a preferred provider.

76.     However, the concessions demanded by the individual Defendants in exchange for remaining on the direct repair program were not balanced by the purported benefits. The Defendants, particularly State Farm, have harmed Plaintiff by utilized these agreements to exert control over many of Plaintiff's competitors' businesses in a variety of manners, well beyond that of an ordinary business agreement.

77.     On information and belief, Defendants, particularly State Farm, have engaged in an ongoing pattern and practice of coercion and implied threats to the pecuniary health of the Plaintiff's business and other auto body shops to try to force compliance with unreasonable and onerous concessions. Failure to comply results in either removal from the direct repair program combined with improper "steering" of customers away from the non-compliant auto body shop's business, or simply improper steering.

78.     According to the Company Market Share Report, as of December 31, 2011,[1] State Farm Defendants have captured 21.17% of the private passenger automobile insurance business within the market area of the state of Oregon. The market share for its closest competitor, Farmers, is slightly more than half of State Farm at 11.62%. The next closest competitor, the Liberty Mutual Defendants,[2] holds less than half the market share of State Farm at 10.22%.

---

[1] The market share report was issued in 2013, based upon 2012 information provided by the Oregon Insurance Division to the National Association of Insurance Commissioners.

[2] Liberty Mutual Defendants include Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM General Insurance Company, LM Insurance Corporation, Safeco Insurance Company of America, and Safeco Insurance Company of Oregon.

PAGE 21 - COMPLAINT

79.     Collectively, the Defendants control nearly all of the private passenger auto insurance market within the State of Oregon.  Twenty-four of the top twenty-five private passenger insurers in Oregon (all of whom are defendants) control over **80%** of the market.  See copy of Oregon Insurance Division Company Market Share Report-2013 attached hereto as Exhibit "1."

80.     Based upon the most recent information available, it is apparent that State Farm holds the unchallenged dominant position within the automobile insurance industry in the Oregon market.

81.     The vast majority of the Plaintiff's business is generated by customers for whom the Defendants are responsible to pay repair costs.  The insurance-paying customers account for between sixty and eight-five percent of Plaintiff's revenue.  Overall, courts have acknowledged the significant role played by insurance companies in funding automobile collision repairs, as well as the ability and market power to exert substantial influence and control over where consumers will take a wrecked car for repairs.  See, e.g., *Allstate Ins. Co. v. Abbott*, 2006 U.S. Dist. LEXIS 9342 (N.D. Tex. 2006)(aff'd, *Allstate Ins. Co. v. Abbott*, 2007 U.S. App. LEXIS 18336 (5th Cir. 2007).

82.     As a general proposition, each DRP contains a general statement that the body shop will charge the respective insurance company no more for any particular repair than is the going rate in the market area.

83.     On information and belief, State Farm establishes the "market rate" as follows.  In order to establish the "market rate," State Farm utilizes what it terms "surveys."  The geographical boundaries of the market area to be "surveyed" to establish the "market rate" are wholly within the control and direction of State Farm.

PAGE 22 - COMPLAINT

84.    Under the terms of its DRP, State Farm is not required to disclose any of the methods by which it establishes neither the market area, the market rate, nor any other factual bases for its determination of the "market rate." The agreement contains no provisions for independent and neutral verification of the data utilized, nor any oversight not directly within the control and direction of State Farm.  The shops are simply required to blindly accept State Farm's pronouncements regarding these matters, whether or not a particular shop is a member of any DRP, including State Farm's.

85.    Previously this "survey" was conducted by sending written documents to the individual shops.  The owner or designated representative of the shop would fill out the survey and return it to State Farm. In recent years, this process has been transferred to an electronic forum, State Farm's Business to Business portal, whereby the shops go online to complete the "survey."

86.    State Farm does not perform a survey in the traditional sense, where information is obtained and results produced, establishing a baseline of all the shops' information.  With respect to labor rates, as an example, State Farm's methodology does not represent what the majority of shops in a given area charge, but quite the contrary.  State Farm's methodology lists the shops in a given market (as determined by State Farm) with the highest rates submitted at the top of the list and descending to the least expensive hourly rates at the bottom.

87.    State Farm then lists how many technicians a shop employs or the number of work bays available, whichever is lesser.  Those are then totaled, and State Farm employs its "half plus one" method.  If, for example, a State-Farm-determined market area has a total of fifty (50) technicians or work bays, State Farm's "half plus one" math equals twenty six (26).  With

PAGE 23 - COMPLAINT

that number, starting at the bottom of the shop list, State Farm counts each shops' technicians or work bays until the "half plus one" number is reached, twenty six in this example, and whatever that shop's rate happens to be is declared the market rate.

88.    There could, arguably, be some validity to this method, if it accounted for the variance in shop size, skill of technicians and other quality variables, but it does not. However, the greatest problem with this method is that State Farm can and does alter the labor rates input by the shops, decreasing those arbitrarily deemed too high–or higher than State Farm wishes to pay.

89.    By altering the rates entered, particularly those of the larger shops, those with the most technicians and/or work bays, State Farm manipulates the results to achieve a wholly artificial "market rate." The results are therefore not that of an actual survey reflecting the designated market area, but are created from whole cloth by State Farm.

90.    Furthermore, State Farm attempts to prohibit the shops from discussing with each other the information each has entered into the survey, or their respective rates in general–whether or not participating in State Farm's program– asserting any discussion may constitute illegal price fixing. State Farm selects the geographical boundaries of the "survey," and State Farm retains the right to alter the "survey" results and does so, all without disclosure or oversight. State Farm does not publish or otherwise make publicly available it's self-determined "market rate."

91.    Another electronic page on State Farm's business portal is known as the Dashboard/Scorecard. An example of State Farm's Dashboard is attached hereto for descriptive purposes as Exhibit "2."

92.    The Dashboard has substantive impact on several levels. It serves as the

PAGE 24 - COMPLAINT

record of an individual shop's survey responses.  It also provides a "report card" and rating of the individual shop based primarily upon three criteria: quality, efficiency and competitiveness.

93.     Within the quality criterion, the shop's reported customer satisfaction, customer complaints, and quality issues identified by an audit are scored.

94.     The efficiency criterion evaluates repair cycle time, number of days a vehicle is in the shop, utilizing information input by the shops on the car's drop-off and pickup dates.

95.     The competitiveness criterion analyzes the average estimate for each State Farm repair, the cost of parts, whether a vehicle is repaired or replacement parts are utilized, the number of hours required to complete repair and similar matters.  An example of a State Farm score card is included within Exhibit "2," second page.

96.     In rating an individual shop, a total score of 1000 is possible. However, State Farm is under no obligation to disclose the weight or total number of points possible given to each factor included in reaching the score, particularly those factors included under the competitiveness criterion. In fact, State Farm has refused to disclose its method of determining competitiveness even to its own team leaders.

97.     Due to this opacity, State Farm maintains complete and unsupervised authority to determine an individual shop's rating. It is therefore possible for a shop to have no customer complaints, high customer satisfaction, no issues identified on an audit, complete compliance with all repair cycle time and efficiency requirements and yet still have a low rating. It is also possible for a shop to have multiple customer complaints, poor customer satisfaction, numerous issues identified on audit and complete failure to meet efficiency expectations and yet have a very high rating.

PAGE 25 - COMPLAINT

98.     The Dashboard rating is very important as a shop's rating determines its position on the list of preferred providers.  When a customer logs on to the State Farm web site seeking a repair shop, those shops with the highest ratings are displayed first.  A shop with a low rating will be at the bottom of the list, often pages and pages down, making it difficult for a potential customer to find it.  If a customer calls State Farm, the representative provides the preferred shops beginning with those holding the highest rating.

### Suppression of Labor Rates

99.     Among the questions asked by the "survey" is the individual shop's hourly labor rate. This information is supposed to be provided by the shop and to accurately reflect that shop's labor rate to allow State Farm to reach a "market rate."  The actual method of determining a "market rate" is described above.

100.    If the labor rate information received is unilaterally deemed unacceptable by State Farm, a State Farm representative will contact the shop and demand the labor rate be lowered to an amount State Farm wishes to pay.

101.    If the body shop advises its labor rates are higher or will be increasing, State Farm representatives will inform the body shop they are the only shop in the area that has raised its rates and that the higher rate does not conform to the "market rate" and is thus a violation of the direct repair program agreement.

102.    At various points in time, State Farm has utilized this method of depressing labor rates, telling each shop they are the only one to demand a higher labor rate when, in fact, multiple shops have attempted to raise their labor rates and advised State Farm accordingly.

103.    On information and belief, if a shop persists in its efforts to raise its labor

PAGE 26 - COMPLAINT

rate, State Farm will take one or more of several "corrective" measures: it will go into the individual shop's survey responses and alter the labor rate listed without the knowledge or consent of the shop and use this lowered rate to justify its determination of the "market rate;" it will threaten to remove the shop from the direct repair program to coerce compliance; it will remove the shop from the direct repair program; it will tell customers that they will have to pay the difference between what the non-compliant auto body shop charges and the allowed "market rate."

104.    The net effect of this tactic is to allow State Farm to manipulate the "market rate" and artificially suppress the labor rate for the relevant geographic area, an area which, again, is defined solely by State Farm and is not subject to either neutral verification or even disclosure.

105.    On information and belief, the remaining Defendants, intentionally and by agreement have determined to pay no more than State Farm pays for labor.  These Defendants have not conducted any surveys of their own in which the Plaintiff has participated to determine market rates.  These Defendants have agreed to join forces with State Farm, the dominant market holder, and each other to attempt to pressure the Plaintiff into accepting the artificially created less-than-market labor rates by overt pressure and by steering customers away from Plaintiff's business.

### Suppression of Repair and Material Costs

106.    On information and belief, through various methods, described in more detail below, the Defendants have, in concert, instituted numerous methods of pressuring the Plaintiff to accepting less than actual and/or market costs for materials and supplies expended in completing repairs.  On information and belief, each of the actions detailed below is the product

PAGE 27 - COMPLAINT

of concerted action by Defendants in restraint of trade.

107.    Some of these methods include but are not limited to: refusal to compensate the shops for replacement parts when repair is possible though strongly not recommended based upon the shop's professional opinion; utilizing used and/or recycled parts rather than new parts, even when new parts are available and a new part would be the best and highest quality repair to the vehicle; attempting to obtain discounts and/or concessions, even when doing so would require Plaintiff to operate at a loss; de facto compulsory utilization of parts procurement programs.

108.    On information and belief, in addition to the above, the Defendants have repeatedly and intentionally failed to abide by industry standards for auto repairs. Three leading collision repair estimating databases are in ordinary usage within the auto body collision repair industry: ADP, CCC, and Mitchell.

109.    These databases provide software and average costs associated with particularized types of repairs to create estimates. The estimates generated by these databases include the ordinary and customary repairs, repair time (labor) and materials necessary to return a vehicle to its pre-accident condition. These databases and the estimates they generate are accepted within the industry as reliable starting points, subject to the shop's expert opinions and the necessarily present variability between the "best-case scenario"[3] presented by the procedure

---

[3] The database procedure pages set forth the anticipated repairs, repair times and materials for repair of an undamaged vehicle using original manufacturer equipment which are specifically designed to fit that particular vehicle. Wrecked cars are obviously not undamaged and original manufacturer parts are not always used, particularly with repairs for which State Farm and the other Defendants are responsible for payment, which can substantially affect repair procedures required, repair times and necessary materials.

PAGE 28 - COMPLAINT

databases and the actual needs of a particular repair.

110.    Over the course of years, the Defendants have admitted the accepted position of the estimating databases within the industry, but have nonetheless engaged in a course of conduct of refusing to make full payment for procedures and materials. In many instances the Defendants will refuse to allow the body shop to perform required procedures and processes, thereby requiring body shops to perform less-than-quality work or suffer a financial loss on a given repair.

111.    A non-exhaustive list of procedures and processes the Defendants refuse to pay and/or pay in full is attached hereto as Exhibit "3."

112.    At the same time, Defendants selectively rely upon and assert the definitive nature of these databases when doing so is to their respective financial advantage. For example, when a particular repair requires twenty hours of labor to complete but the database estimate notes fifteen hours of labor is standard for that type of repair, Defendant will cite the database estimate and pay for only fifteen hours of labor time.

113.    With respect to materials, while it is inarguable that materials must be expended to repair automobile collisions, the Defendants simply refuse to pay for them, asserting materials are part of the cost of doing business. This is the Defendants' position even when the authoritative databases specifically state that such materials are <u>not</u> included in the repair procedure pages.

114.    On information and belief, the only partial exception to this practice is paint. While paint costs are factored into the amount the Defendants will pay, the rates Defendants pressure the Plaintiff to accept would require Plaintiff to operate at a loss with respect to paint materials. The Defendants' method of calculating paint payment does not take

PAGE 29 - COMPLAINT

into account the type of paint needed/used, the requirement that paint be mixed to match the existing color of the vehicle, the actual amount of paint required to complete the job, the type of vehicle involved or any other factor.

115.    This continued refusal and/or failure to compensate Plaintiff for ordinary and customary repairs and materials has caused damage to Plaintiff's business.

116.    As illustration, on information and belief, the foregoing concerns prompted a meeting between many body shops involved in an action originally filed in the United States District Court, Southern District of Mississippi, styled as *Capitol Body Shop, Inc. et al v. State Farm Mut. Auto Ins. Co.,* Cause No. 3:14-cv-12.[4] There, body shop representatives met with Tim Bartlett, State Farm Estimatix team leader, John Findley, Estimatix section manager, Steve Simkins, State Farm counsel for Mississippi and Alabama, and members of the Mississippi Department of Insurance in April, 2013. At this meeting, the members of the automobile collision repair industry expressed their dissatisfaction and concerns with the practice of refusing to compensate fully and fairly for repairs that were performed and State Farm's inconsistent application of the database estimating software, i.e., utilizing database estimates only when it is in State Farm's financial best interest to do so.

117.    State Farm representative, Tim Bartlett, acknowledged (before witnesses) that repairs and subsequent payment for those repairs should be consistent with the estimates prepared through the database software. Mr. Bartlett assured those present, including the Department of Insurance representative, that it would begin abiding by those database estimates

---

[4]The cause has been transferred to the Middle District of Florida, Orlando Division, as part of Multidistrict Litigation No. 2557.

and stated it would raise the matter at its insurance industry meetings, held locally approximately once a month.

118.   Also at that meeting, Mr. Simpkins asked if insurance representatives might be permitted to attend the meetings of the Mississippi Automobile Collision Society. The association representative present for the meeting, John Mosley, invited State Farm to attend those Association meetings if State Farm would permit members of the Association to attend the insurance meetings. Mr. Simpkins refused.

119.   Despite the assurances given the body shop representatives and the Department of Insurance at this meeting, State Farm failed to perform as promised in Mississippi. The same status has continued in Oregon.  State Farm, and the other Defendants in collusion with State Farm, have continued to refuse to make payment and/or full payment for necessary and proper repairs, labor and materials.

120.   Defendant State Farm also imposes restrictions upon the Plaintiff's ability to obtain and utilize quality replacement parts and materials.  As part of its DRP agreement, State Farm asserts it has the unilateral authority to enter into separate agreements with manufacturers, distributors or suppliers of automotive parts, supplies or materials.

121.   Despite the fact that shops have no involvement in the negotiation of those separate agreements, they are de facto required to abide by the pricing agreements reached, even if they do not make purchases with those vendors.  Although presented as an option to participate, the optional language is rendered nugatory by additional language which requires shops to accept as payment only that amount for which the parts and/or materials could have been obtained through those agreements.  Participation or lack thereof is therefore completely meaningless and the optional language is illusory.  The Defendants enforce these limitations

PAGE 31 - COMPLAINT

and/or requirements across the board, even against shops, like the Plaintiff, which are not DRP shops.

122.     Moreover, DRP shops are required to "stack" this purportedly optional usage of separate agreements with other discounts required elsewhere within the agreement. Thus, the limitation on payment, refusal to compensate for nearly all materials, and the compelled discounts end in DRP shops operating at or near a loss for each repair.

123.     Though led by State Farm as the dominant market share holder, on information and belief, all Defendants have agreed to the compensation ceilings established by State Farm solely for their own profit.

### Steering

124.     On information and belief, the Defendants regularly and routinely engage in "steering" in order to punish noncompliant shops. Oregon law prohibits automobile insurance companies from requiring consumers to use particular body shops to effect repairs. In order to avoid facially violating this law, the Defendants will "steer" insureds and/or claimants to favored, compliant shops through misrepresentation, insinuation, and casting aspersions upon the business integrity and quality of disfavored repair centers.

125.     On information and belief, examples of this practice include telling insureds and/or claimants that a particular chosen shop is not on the preferred provider list; that quality issues have arisen with that particular shop; that complaints have been received about that particular shop from other consumers; that the shop charges more than any other shop in the area and these additional costs will have to be paid by the consumer; that repairs at the disfavored shop will take much longer than at other, preferred shops and the consumer will be responsible for rental car fees beyond a certain date; and that the Defendant cannot guarantee the work of

PAGE 32 - COMPLAINT

that shop as it can at other shops.

126.     These statements have been made about the Plaintiff without any attempt to ascertain the truth thereof. Some of the ills recited by Defendants that implicitly criticize the Plaintiff are wholly attributable to the insurers themselves.  For instance, after the statement that repairs will take longer at a disfavored shop, consumers are not told the delay in beginning repairs is due to the insurer's decision to delay sending an appraiser to evaluate the damage, a decision completely and wholly within the control of the Defendants.  Asserting the shop charges more is often not a function of what the shop actually charges, but of the Defendants' refusal to pay, also a factor wholly and completely within the control of the respective Defendant.  Yet both are conveyed to the public as problems with the shop rather than the effect of Defendants' own decisions.

127.     The most egregious of these statements, that the Defendants cannot guarantee the work of the shop, is particularly misleading as none of the Defendants offer a guarantee for repair work. Instead, the Defendants require the body shops to provide a limited lifetime guarantee on work performed.  In the event additional work is required, the body shop is required to do so without any additional payment, or to indemnify the insurer for costs if work is performed at another shop.

128.     Thus, while it may be a facially truthful statement that an insurer cannot guarantee the work of a particular shop, the clearly understood inference is that it can and will guarantee the work of another, favored shop, which is simply not true.

### Intentional Nature of Defendants' Conduct

129.     In 1963, a consent decree was entered in *United States vs. Association of Casualty and Surety Companies*, et al, Docket No. 3106, upon complaint filed in the Southern

PAGE 33 - COMPLAINT

District of New York.  The allegations of that complaint included violations of Sections 1 and 3

of the Sherman Act, also known as the Sherman Antitrust Act.  A copy of this Decree is attached

hereto as Exhibit "4."

130.    Specific actions supporting the allegations of the complaint included: (1)

requiring repair rather than replacement of damaged parts; (2) replacing damaged parts with used

rather than new parts; (3) obtaining discounts on new replacement parts; (4) establishing strict

labor time allowances;  (5) suppressing the hourly labor rate; (6) channeling auto repairs to those

repair shops which would abide by the insurer estimates and boycotting those which refused.

The complaint further alleged a conspiracy and combination in unreasonable restraint of trade

and commerce for these practices.

131.    The Consent Decree order enjoined the defendants from (1) placing into

effect any plan, program or practice which has the purpose or effect of (a) directing, advising or

otherwise suggesting that any person or firm do business or refuse to do business with any

independent or dealer-franchised automotive repair shop with respect to the repair of damage to

automobile vehicles; (2) exercising any control over the activities of any appraiser of damages to

automotive vehicles; (3) fixing, establishing, maintaining or otherwise controlling the prices to

be charged by independent or dealer-franchised automotive repair shops for the repair of damage

to automotive vehicles or for replacement parts or labor in connection therewith, whether by

coercion, boycott or intimidation or by the use of flat rate or parts manuals or otherwise.

132.    Whether or not any current Defendant is legally bound by this Decree, the

actions described in the present cause fall squarely within those prohibited by the Decree.  The

Decree has been "on the books" for fifty years and is well-known within the insurance industry.

133.    Being known, it can only be said that Defendants were fully aware their

PAGE 34 - COMPLAINT

actions, plans, programs, and combinations and/or conspiracy to effectuate the same have been

willful, intentional and conducted with complete and reckless disregard for the rights of the

Plaintiff.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (QUANTUM MERUIT/UNJUST ENRICHMENT)

134.    Plaintiff realleges the preceding allegations.

135.    Plaintiff has performed valuable services and expended material resources

with the reasonable expectation of full payment for those services and materials.  Performing

said services and expending material resources benefitted Defendants and Defendant's

insured/claimants for whom Defendants are required to provide payment for repairs.  Defendants

have not fully compensated Plaintiff for the services and materials provided, and it would be

unjust to allow Defendants to retain the benefits Plaintiff has conferred on them without

requiring Defendants to fully pay such benefits.

136.    It was and has always been foreseeable the Plaintiff was not performing

labor or providing services and materials without expectation of full payment. However,

Defendants have simply taken the position that payment may not be made unless they choose to

provide it, regardless of any other factor or consideration and have thus enriched themselves at

the expense of Plaintiff.

137.    Plaintiff is equitably entitled to receive payment for all the materials and

services rendered.

## SECOND CLAIM FOR RELIEF

## (QUASI-ESTOPPEL)

138.    Plaintiff realleges the allegations in paragraphs 1-133 above.

139.    Quasi-estoppel is an equitable principle. This long-standing doctrine is applied to preclude contradictory positions by preventing a person from asserting to another's disadvantage, a right inconsistent with the position previously taken.

140.    The Defendants have relied upon and asserted the validity/authority of the databases, supra, when it has been to their respective advantage. Despite this, State Farm and the other Defendants have refused to compensate and/or fully compensate Plaintiff for materials expended and work performed, including labor and labor rates, upon reliance of these very same guides, claiming they are unnecessary to complete the work at hand.

141.    Defendants' inconsistent and contradictory application of, or refusal to abide by, the guidelines of the industry databases has created an atmosphere of doubt, uncertainty and distrust, all to the severe detriment of Plaintiff while, at the same time, seeking to obtain every improper advantage for Defendants themselves.

142.    Plaintiff therefore seeks to have the Defendants estopped from denying the applicability and reasonableness of the baseline procedures and costs set forth in the industry databases henceforth and make full payment for the necessary reasonable costs of repairs made for the benefit of Defendants' insureds and claimants.

## THIRD CLAIM FOR RELIEF

## (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

143.    Plaintiff realleges the allegations in paragraphs 1-133 above.

144.    By the improper means of violating ORS 746.280 (anti-steering statute), ORS 646.608(e) (prohibiting disparagement of another business by false and misleading representations), and/or the Sherman Act, Defendants have intentionally interfered with Plaintiff's relationship with its customers and prospective customers.

145.    On information and belief, the purpose of these actions was twofold: to punish the Plaintiff who complained about or refused to submit to the various oppressive and unilateral price ceilings the Defendants were enforcing upon it, and to direct potential customers of the Plaintiff to other vendors who would comply with the maximum price ceilings unilaterally imposed by the Defendants.

146.    The Plaintiff has been damaged by the Defendants' malicious and intentional actions. Plaintiff is therefore entitled to compensation for these damages.

## FOURTH CLAIM FOR RELIEF

## (OREGON UNFAIR TRADE PRACTICES ACT)

147.    Plaintiff realleges the allegations in paragraphs 1-133 above.

148.    The Oregon Unfair Trade Practices Act ("OUTPA"), ORS 646.605, *et seq.*, prohibits unfair or deceptive acts or practices in the conduct of trade or commerce.

149.    Defendants have violated the OUTPA by making false and disparaging comments to their insureds about Plaintiff's services and have thereby caused damage to Plaintiff.

## FIFTH CLAIM FOR RELIEF

## (VIOLATIONS OF THE SHERMAN ACT)

### COUNT I

### (PRICE-FIXING)

150.    Plaintiff realleges the allegations in paragraphs 1-133 above.

151.    The Sherman Act prohibits contracts, combinations or conspiracies in restraint of trade. 15 U.S.C. §1. Such agreements are illegal if (1) their purpose or effect is to create an unreasonable restraint of trade, or (2) they constitute a per se violation of the statute.

152.    On information and belief, through explicit agreement, the Defendants have formed and engaged in a conspiracy or combination to impose maximum price limits upon the Plaintiff for its products and services.  An agreement among buyers to fix the maximum price they will pay to sellers is no less a violation of the Sherman Act than an agreement among sellers to fix the price they will charge to buyers.

153.    The United States Supreme Court has noted that agreements to fix maximum prices, no less than those to fix minimum prices, cripple the freedom of traders and thereby restrain their ability to sell in accordance with their own judgment. *Kiefer-Stewart Co. Vs. Joseph E. Seagram and Sons, Inc.*, 340 U.S. 211 (1951).

154.    The Defendants and co–conspirators have engaged in combination and conspiracy in unreasonable restraint of trade and commerce in the automobile damage repair industry.

155.    The aforesaid combination and/or conspiracy has consisted of a continuing agreement in concert of action among the Defendants and co-conspirators to control and suppress automobile damage repair costs, automobile material repair costs through coercion and

PAGE 38 - COMPLAINT

intimation of these shops.

156.    Evidence of this conspiracy or combination includes, but is not limited to, admission before witnesses that members of the insurance industry meet regularly to discuss such matters in and amongst themselves; statements by Defendants that they will conform to State Farm's payment structure; Defendants' admitting the baseline application of the industry database but failing to conform to that minimum standard; and the uniformity of action by all Defendants.

157.    A horizontal agreement among competitors to use the same method of determining or quoting payment such as State Farm's method for determining the "market rate" is no less unlawful than agreeing to specific dollar amounts. *FTC v. Cement Institute*, 333 U.S. 683 (1948).  Absent agreement, Defendants' conspiracy would not work, because its success depends on multiple steps, from setting "market rate" for labor to moving repair shops down the list of recommended repair facilities to steering customers away from non-compliant shops.  Moreover, any economic incentive insurers may have to reduce expenditures on collision repairs is more than overcome by the incentive insurers have to gain market share by advertising themselves as the insurer that does not cut corners on safety and the quality of repair work, but instead makes sure that repairs are done properly.  Defendants' conduct runs counter to the millions of dollars insurers spend to gain or maintain market share by advertising "new car replacement" and "accident forgiveness" policy terms.  Furthermore, Defendants' actions are not entitled to any presumption that they are the product of unilateral activity, as opposed to concerted action, under *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752 (1984) and *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), because their conduct is not pro-competitive and merits no special protection.  To the contrary, Defendants' conspiracy creates the risk of

PAGE 39 - COMPLAINT

improper repairs and putting unsafe vehicles back on the road.  Under the Ninth Circuit's decision in *In re Petroleum Products Antitrust Litigation*, 906 F.2d 432 (9th Cir. 1990), such actions enjoy no *Monsanto* or *Matsushita* protection, and Defendants' lockstep behavior alone, or in combination with the plus factors noted above, is enough to give rise to an inference of conspiracy.

158.     The aforesaid offenses have had the effect of eliminating competition within the automobile damage repair industry, elimination of some shops from a substantial segment of the automobile damage repair industry for refusing or attempting to refuse the Defendants' arbitrary price ceilings, and subjecting repair shops to collective control and supervision of prices by the Defendants and co-conspirators.

159.     The Defendants actions collectively have violated federal law and directly caused the Plaintiff to incur substantial damages. Defendants are continuing and will continue said offenses unless the relief herein prayed for is granted.

## COUNT II

## (BOYCOTT)

160.     Plaintiff realleges the allegations in paragraphs 1-133 above.

161.     The United States Supreme Court has repeatedly held that boycotts constitute a violation of the Sherman Act, 15 U. S. C. §1. "Boycott" has been defined within the antitrust law context as "pressuring a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541 (1978).

162.     The Defendants have engaged, and continue to engage, in boycott and

PAGE 40 - COMPLAINT

boycotting activity through their repeated actions of steering customers away from the Plaintiff through allegations and intimations of poor quality work, of poor efficiency in performing work, of questionable business practices, of overcharging, impugning integrity, and similar actions so as to withhold and/or enlist others to withhold patronage from the Plaintiff.

163.    This boycott was specifically designed to pressure, intimidate, and/ or coerce the Plaintiff into complying with the maximum-price limitations unilaterally conceived by Defendant State Farm and agreed to collusively by the other Defendants.

164.    It is irrelevant for purposes of the Sherman antitrust boycott activity that the Plaintiff and Defendants are not direct competitors within the same industry. The United States Supreme Court has directly addressed this issue in *St. Paul Fire and Marine Insurance Company*, supra, stating, "[B]oycotters and the ultimate target need not be in a competitive relationship with each other." 438 U.S. at 543.

165.    The enlistment of third parties as a means of compelling capitulation by the boycotted group has long been viewed as conduct supporting a finding of unlawful boycott. *Id.*

166.    In the present matter, the Defendants have engaged in not only a boycott, but have regularly, routinely and purposefully enlisted the aid of unwitting third parties in carrying out their boycott through their intentional acts of steering those customers away from the Plaintiff.

167.    Defendants' boycott was created and carried out with the sole purpose and intent of financially coercing and threatening the Plaintiff into complying with the Defendants price caps.

168.    The Defendants actions are violation of federal law and have directly

PAGE 41 - COMPLAINT

caused the Plaintiff to incur substantial damages. Defendants are continuing and will continue said offenses unless the relief requested herein is granted.

**PRAYER FOR RELIEF**

169.    As a result of the Defendants' actions, Plaintiff has been substantially harmed and will continue to suffer unless the relief requested herein is granted.  The Plaintiff therefore prays for the following relief:

A.    Compensatory damages for all non-payment and underpayment for work completed on behalf of the Defendants' insureds and claimants as determined by a jury.

B.    Compensation for the lost revenue through artificial suppression of labor rates as determined by a jury.

C.    Damages sufficient to compensate Plaintiff for lost business opportunities as determined by a jury.

D.    Treble damages, reasonable attorneys' fees and costs  for violations of the Oregon Unfair Trade Practices and the Sherman Act, under ORS 646.638 and 15 U.S.C. § 15.

E.    Injunctive relief prohibiting the Defendants from further engaging in any of the following:

a.    Placing into effect any plan, program or practice which has the purpose or effect of:

b.    Directing, advising or otherwise suggesting that any person or firm do business or refuse to do business with any Plaintiff automotive repair shop with respect to the repair of damage to automobiles.

PAGE 42 - COMPLAINT

c. Fixing, establishing or otherwise controlling the prices to be charged by independent or dealer franchised automotive repair shops for the repair of damage to automobiles or for replacement parts or labor in connection therewith whether by coercion, boycott or intimidation, or by the use of flat rate or parts manuals or otherwise.

d. Placing into effect any plan, program or practice which explicitly requires or has the purpose or effect of requiring Plaintiff to participate in any parts procurement program.

e. Providing untruthful and/or unverified information to customers or third persons regarding the quality, cost, efficiency or reputation of any Plaintiff ("steering").

f. Prohibiting Defendant State Farm from altering or amending any Plaintiff response to its market labor rate "survey" without the express written permission of the affected Plaintiff.

F.   Punitive and/or exemplary damages sufficient to punish Defendants for their intentional acts and deter each Defendant and similar entities from pursuing this improper conduct in the future.

G.   Pre- and post-judgment interest.

H.      Any additional relief the Court deems just and appropriate.

DATED this 7th day of November, 2014.

TONKON TORP LLP

By: _s/Steven D. Olson_
    Steven D. Olson, OSB No. 003410
    Paul W. Conable, OSB No. 975368

    Attorneys for Plaintiff Leif's Auto Collision
    Centers, LLC

080000/00160/6013892v1

PAGE 44 - COMPLAINT