**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |
|---|---|
| LEIF'S AUTO COLLISION CENTERS, LLC, an Oregon limited liability company dba LEIF'S AUTO COLLISION CENTERS,<br><br>         Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *et al.*,<br><br>         Defendants. | **Case No. 6:14-MD-02557-GAP-TBS**<br><br>**RE: No. 6:14-CV-06014-GAP-TBS**<br><br>**DISPOSITIVE MOTION** |

<u>**GEICO CASUALTY COMPANY, GEICO GENERAL INSURANCE COMPANY AND GEICO INDEMNITY COMPANY'S MOTION AND SUPPORTING MEMORANDUM TO DISMISS COMPLAINT**</u>

Defendants GEICO Casualty Company, GEICO General Insurance Company and GEICO Indemnity Company (collectively, "GEICO"), move to dismiss Plaintiff's Complaint ("Complaint") for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The grounds and authority for this motion are set forth in the following supporting memorandum, which is incorporated as part of this motion.

## MEMORANDUM

In June 2014, this Court dismissed the complaint in *A&E Auto Body, Inc., et al. v. 21st Century Centennial Ins. Co., et al.*, No. 6:14-cv-310-Orl-31TBS (M.D. Fla. June 11, 2014) (Doc. 110) ("*A&E* June 2014 Order"), because, among other reasons, plaintiffs in that case failed to make competent factual allegations that GEICO engaged in any wrongful conduct.

Nearly five months after this Court's order dismissing the complaint in *A&E*, Plaintiff in this case filed its Complaint. Doc. 1. The allegations in *A&E* and the Complaint are substantively identical and Plaintiff continues to ignore the Court's previous Order dismissing a nearly identical and facially-flawed complaint. The same counsel representing Plaintiff has even admitted to this Court that nearly identical complaints should be dismissed. *See* Plaintiffs' Motion to Stay at ¶ 6, *A&E Auto Body, Inc., et al. v. 21st Century Centennial Ins. Co., et al.*, No. 6:14-md-2557 (M.D. Fla. March 19, 2015), Doc. 166.

When this Court dismissed the *A&E* complaint in June 2014 it held that the complaint there, as is true here, "suffers from a host of problems," the most serious of which included:

- "[T]he Complaint is a prohibited 'shotgun pleading,' with each count incorporating irrelevant allegations" from the fact section of the complaint;

- "The Complaint fails to identify which Plaintiffs have DRP agreements with which (if any) Defendants"; and

- "With limited exceptions, the allegations of wrongdoing are attributed, collectively, to every Defendant and alleged to have been perpetrated upon every Plaintiff. While there may be situations in which such collective descriptions are sufficient, at least some of claims asserted here require individualized allegations."

*A&E* June 2014 Order at 1-2.  Plaintiff here decided not to fix its facially-deficient claims knowing as much.[1]

In January 2015, this Court again dismissed an amended complaint – nearly identical in substance to the instant complaint.  *A&E* Jan. 21, 2015 Order amended January 22, 2015 to correct scrivener's error (Doc. 293) ("*A&E* January 2015 Order").  Applying Florida law, this Court dismissed claims for *quantum meruit*, unjust enrichment, quasi-estoppel, tortious interference, and conversion.  Here, Plaintiff's state law claims include *quantum meruit*/unjust enrichment, quasi-estoppel, tortious interference with prospective economic advantage and violations of the Oregon Unfair Trade Practices Act ("OUTPA").  With respect to the first three claims, the allegations are nearly identical to those dismissed by this Court in *A&E* and which Plaintiff's counsel has conceded warrant dismissal.[2]  Further as to these claims, the central elements relied upon by this Court in *A&E* are functionally equivalent to the corresponding elements under Oregon law.  Accordingly, the instant state law claims should be dismissed.  The OUTPA claim should also be dismissed because Plaintiff lacks standing to pursue an OUTPA claim and insurance services are not governed by OUTPA.

Also in its January 2015 Order, this Court dismissed the *A&E* antitrust claims.  The Court held the allegations were insufficient as a matter of law to prove a conspiracy existed or that any of the defendant-insurers – including GEICO – joined the purported conspiracy. *A&E* January 2015 Order at 17-21.  The *A&E* January Order concluded that the allegations

---

[1] *See* Stacey Phillips, *Antitrust Multidistrict Litigation in FL Motions Granted in Part and Denied in Part*, Autobody News (January 23, 2015), http://autobodynews.com/2014-07-31-03-39-53/industry-news/item/9474-updateonantitrustmultidistrictlitigationinfl.html ("John Eaves . . . the lead lawyer . . . said this was not a surprise. 'We anticipated [the dismissal],' said Eaves. 'This is what was done the first time we filed a complaint in Florida.  My interpretation is that [Judge Presnell] wanted a lot more of the actual facts and details in the complaint… instead of something so general.'").

[2] This Court asked Defendants to explain if and how the common law of any state in which an action was originally filed differs from Florida law with respect to the state common law claims.  As GEICO has demonstrated, with regard to the elements of each common law cause of action that led this Court to dismiss the claim in *A&E,* Oregon law mandates the same result because the analysis of the specific elements this Court considered in *A&E* is substantially similar given the nearly identical facts alleged here.  GEICO does not, however, concede that Oregon law and Florida law are otherwise identical on these causes of action, as different factual allegations or analysis of different elements of the causes of action would require further focus on Oregon law.

only tended to prove that the defendant-insurers were lawfully acting out of their own economic self-interest, rather than acting pursuant to any allegedly illegal agreement. *Id.* at 17-18. The U.S. Supreme Court has made clear that antitrust conspiracy allegations must contain facts that create a plausible theory of an actual conspiracy and that the defendant joined that conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); and their progeny. As in *A&E*, Plaintiff's Complaint here does not contain any allegations of face-to-face meetings, phone calls, emails, texts or letters, or trade association meetings involving GEICO, nor does it allege that pricing information was shared with or by GEICO, or of even a "wink and a nod" towards or by GEICO. Plaintiff has not alleged a single fact – plausible or otherwise – that GEICO did anything whatsoever that could support a Sherman Act conspiracy claim against it. With respect to the antitrust claims, the allegations here are identical to the allegations dismissed by this Court in *A&E*. The law is exactly the same. Accordingly, the instant antitrust claims should be dismissed.

In addition to this Court's June 2014 and January 2015 Orders in *A&E*,[3] the instant complaint should be dismissed because:

1. *Plaintiff's shotgun pleading and nonspecific references to "Defendants" are improper.* Plaintiff's 169-paragraph Complaint includes six causes of action, each of which purport to incorporate each allegation in the Complaint, and none of which identify which of the previously alleged "facts" are meant to support that particular claim. The Eleventh Circuit Court of Appeals does not allow such "shotgun" pleading. In addition, Plaintiff's 169-paragraph Complaint makes only three references to GEICO. Paragraphs 20-22 allege that GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity

---

[3] Although GEICO acknowledges it has already made these, or similar, arguments in *A&E* and other briefs, GEICO maintains Plaintiff's Complaint should be dismissed for these additional reasons and restates these arguments here so that this Plaintiff has the opportunity to demonstrate otherwise. In particular, GEICO's additional arguments in favor of dismissal of Plaintiff's Sherman Antitrust Act claims (sections III and IV) are nearly identical to similar sections in GEICO's *A&E* brief.

Company are each "registered with the Oregon Insurance Division to do business in and is doing business within the state of Oregon . . . ." *See* Compl. ¶¶ 20-22. The Complaint does not mention GEICO anywhere else, making nonspecific references to "Defendants" instead. The Eleventh Circuit Court of Appeals also does not allow the repeated nonspecific references to "Defendants" that Plaintiff attempts.

2.    *Plaintiff's attempted antitrust claims do not allege any of the required substantive elements.*  The rule of reason applies to Plaintiff's antitrust claims but, in addition to the elements of conspiracy and joining the conspiracy, Plaintiff fails to allege the following substantive elements:

- A product/service market that is relevant for antitrust purposes.
- A geographic market that is relevant for antitrust purposes.
- Market power in a relevant product/service and geographic market.
- Barriers to entry.
- How the purported restraints result in anticompetitive effects.
- How purported anticompetitive effects outweigh the purported restraints' procompetitive benefits, particularly since Plaintiff alleges that the purported restraints lower prices.
- That they suffered antitrust injury from anticompetitive effects.

3.    *Plaintiff's attempted state law claims do not allege necessary elements or satisfy the Twombly/Iqbal requirements.*  Plaintiff fails to allege one or more required substantive elements for each of its purported state law claims.  And each of its attempted state law claims further fail to satisfy the *Twombly/Iqbal* plausibility requirement.

Furthermore, both this Court's June 2014 and January 2015 Orders in *A&E* gave specific directives on how to *start* to fix the instant complaint.  *A&E* June Order at 1-2; *A&E* January Order at 9-10, 14, 15, 17-21.  Plaintiff ignored this Court's directives.  On this basis, the Court should dismiss the instant complaint with prejudice.

I.    **DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF FAILS TO ALLEGE PLAUSIBLE FACTS SUPPORTING THE ELEMENTS OF ITS CLAIMS AS TO GEICO**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is insufficient if it offers "only labels and conclusions." *Id.* The Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Id.* Conclusory allegations are "not entitled to the assumption of truth" on a motion to dismiss. *Id.* at 679. Further, to survive a motion to dismiss, "[t]here must be 'more than a sheer possibility that a defendant has acted unlawfully.'" *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Plaintiff's Complaint against GEICO contains nothing more than labels, conclusory statements and threadbare recitals of the elements of various causes of action, and oftentimes, it lacks even such minimal pleading.

## II. PLAINTIFF'S SHOTGUN PLEADING AND GROUP REFERENCES TO "DEFENDANTS" ARE IMPROPER

Plaintiff in this case continues to improperly rely on "shotgun pleading." "[S]hotgun pleading is most commonly used to describe a Complaint in which each count incorporates by reference all of the preceding paragraphs and counts." *McMahon v. Hunter*, No. 2:06-CV-00179-34DNF, 2007 WL 1952906, at *3 n.11 (M.D. Fla. July 2, 2007); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (describing shotgun pleading as a complaint which "begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief"). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001).

The Eleventh Circuit has frequently criticized this manner of pleading. *See Peavy v. Black*, 476 F. App'x 697, 699 (11th Cir. 2012) (quoting *PVC Windoors, Inc. v. Babbitbay*

*Beach Const., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010)) (discussing the "massive waste of judicial and private resources" caused by shotgun pleadings). It is neither the job of defense counsel nor the trial court to sift through the pleadings to determine which facts are material to which causes of action. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). This Court has already dismissed a nearly identical shotgun-pled complaint for this very reason. *A&E June 2014 Order* at 1.

Plaintiff also may not plead in the "common" or "group;" rather, Plaintiff must adequately connect specific defendants to the acts they are alleged to have committed. *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 619 F. Supp. 2d 1260, 1271-74 (M.D. Fla. 2009) *aff'd,* 451 F. App'x 862 (11th Cir. 2012) (holding that the lumping together or "[t]he grouping of Defendants . . . does not afford these Defendants fair notice of the basis for the claims against them," particularly in situations where the role of each Defendant in the conduct at issue is not described). When a plaintiff alleges nothing about a defendant, as Plaintiff continues to do here with respect to GEICO, the claims are not plausible and fail as a matter of law. *Id.*; *see also Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, No. 2:11-CV-707- FTM-29, 2012 WL 4009534, at *2 (M.D. Fla. Sept. 12, 2012) (holding that "indiscriminately lumping 'defendants' together" fails to comply with Federal Rule of Civil Procedure 8).

Plaintiff's Complaint improperly contains a laundry list of Defendants grouped together with no particular allegations against GEICO or virtually any other Defendant. In fact, Plaintiff's allegations make every effort to conceal what conduct Plaintiff may be alleging against GEICO. In this regard, the Complaint alleges that "[t]hrough various methods . . . the Defendants have, in concert, instituted numerous methods of pressuring the Plaintiff to accepting less than actual and/or market costs for materials and supplies expended in completing repairs." Compl. ¶ 106. Plaintiff then proceeds to enumerate some of these methods, but at no point does it ascribe any of the alleged coercive methods to a particular

Defendant or tie any particular coercive method to harm allegedly suffered by Plaintiff. Compl. ¶ 107. This issue is compounded because Plaintiff's individual causes of action do not indicate upon which of the previously alleged "facts" they rely. In *A&E*, this Court already recognized the difficulty in discerning the factual allegations that support the various claims made against GEICO or any other Defendant. *A&E* January 2015 Order at 4. Plaintiff's Complaint contains only conclusions and vacuous allegations – as to GEICO, there are no alleged statements or actions – and each of the claims fails to state which factual allegations support them. Plaintiff's Complaint as to GEICO should therefore be dismissed.

## III. PLAINTIFF'S PURPORTED ANTITRUST CLAIMS DO NOT ALLEGE A PLAUSIBLE CONSPIRACY (OR ANY CONSPIRACY) INVOLVING GEICO

Plaintiff's purported antitrust allegations do not state a plausible illegal conspiracy or that GEICO joined any allegedly illegal conspiracy. This Court looked at identical allegations in the *A&E* matter and held that the allegations do not state a plausible illegal conspiracy or that GEICO joined any allegedly illegal conspiracy. *A&E* January 2015 Order at 15-21. For these reasons, the instant antitrust allegations should be dismissed.

Further, this Court previously directed the plaintiffs to amend their antitrust allegations and has conceded that these antitrust allegations are deficient. *A&E* June Order at 1-2; *A&E* January Order at 17-21; Plaintiffs' Motion to Stay at ¶ 6, No. 6:14-md-2557, Doc. 166. Plaintiff apparently made the tactical decision not to amend.[4] For this reason, the antitrust claims should be dismissed with prejudice.

Plaintiff's antitrust conspiracy claims turn on the adequacy (or, rather, inadequacy) of the generalized conspiracy allegations. *See Twombly*, 550 U.S. at 555-56. In *Twombly*, the plaintiffs generally alleged the defendants in that case acted similarly, or "in parallel," with each other, so they must have been "conspiring" together to violate Section 1 of the Sherman Act. *Id.* at 550-51; *A&E* January 2015 Order at 18, 20. The Supreme Court made clear that

---

[4] This is not the first time Plaintiff's counsel made a tactical decision not to amend despite knowing that the claims would be dismissed. The instant Plaintiff ignored this Court's *A&E* June 2014 Order and did not fix flaws this Court identified in that Order.

such generalized allegations, without express allegations of any plausible facts tending to prove an actual conspiracy, fail to state a claim. *Twombly*, 550 U.S. at 556-57. As this Court has held, antitrust plaintiffs must allege plausible facts demonstrating (a) how the defendants conspired together and (b) how a particular defendant, like GEICO, joined the illegal conspiracy. *A&E* January 2015 Order at 17 ("Plaintiffs offer no details at all in the Amended Complaint about the alleged agreement, such as how the Defendants entered into it, or when."); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319-22 (3d Cir. 2010); *see Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (failure to "identify the alleged conspirators, when or how they functioned, or the nature and extent of [the defendant's] participation in the alleged conspiracy" warranted dismissal of complaint for failure to "state a claim of horizontal price-fixing").

With respect to the conspiracy element, the Sherman Act also requires the agreement amount to "a conscious commitment to a common scheme designed to achieve an unlawful objective," not simply concerted activity. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). As this Court explained, "[t]o prove an agreement to restrain trade, a plaintiff must demonstrate a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *A&E* January 2015 Order at 20 (citing *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 569 (11th Cir. 1998)). "A naked allegation of conspiracy or agreement, without more specific factual allegations, *is not to be accepted as sufficient to state a claim under Section 1 of the Sherman Act*." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (emphasis added).

*Twombly* also recognized that "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." 550 U.S. at 558. To prevent prolonged and costly discovery in antitrust cases, the Supreme Court limited the range of inferences that can be drawn at the pleading stage from bare allegations of parallel conduct. *See id.* at 559-60. "[I]t

is only by taking care to require allegations that reach the level suggesting a conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support a § 1 claim." *Id.* (citations omitted). GEICO should not be required to defend itself in a long and protracted litigation when Plaintiff has not even cited a single fact implicating GEICO in any alleged conspiracy.

To fulfill its pleading requirement with respect to the alleged conspiracy, Plaintiff must allege facts showing that:

1.   GEICO knew about the alleged conspiracy **and** its unlawful objective;

2.   GEICO intended to join the alleged conspiracy; and

3.   GEICO acted in a manner that was interdependent with – not independent of – the other Defendants in that GEICO's conspiratorial benefits depended on the success of the overall conspiracy.

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Communications, Inc.,* 376 F.3d 1065, 1078 (11th Cir. 2004) (stating elements of conspiracy); *see also United States v. Tarantino,* 846 F.2d 1384, 1392 (D.C. Cir. 1988); *In re Vitamins,* 320 F. Supp. 2d 1, 15-17 (D.D.C. 2004); *A&E* January 2015 Order at 15-20.

Counts One and Two of Plaintiff's Fifth Claim for Relief for violations of the Sherman Act fail because Plaintiff fails to allege any plausible facts tending to prove that the Defendants agreed or conspired to engage in price fixing (Count One) or a boycott (Count Two) in *violation* of Section 1 of the Sherman Act. Plaintiff must allege that "the challenged anticompetitive conduct 'stem[s] from . . . an agreement, tacit or express'" with competitors and not from independent decisions. *A&E* January 2015 Order at 16 (quoting *Twombly*, 550 U.S. at 553); *Twombly*, 550 U.S. at 557 ("An allegation of parallel conduct . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief.") (citations omitted); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[C]onduct as consistent with permissible competition as with illegal conspiracy does not,

standing alone, support an inference of antitrust conspiracy."). Plaintiff also fails to allege any facts tending to show that GEICO or any Defendant made a conscious commitment to an unlawful objective. *A&E* January 2015 Order at 20 ("To prove an agreement to restrain trade, a plaintiff must demonstrate a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement. To adequately plead that such an agreement exists requires allegations plausibly suggesting – not merely consistent with – agreement."). Plaintiff's Complaint contains nothing more than a naked allegation of conspiracy.

In addition to failing to allege a conspiracy, Plaintiff also fails to allege a single fact – plausible or conclusory – that GEICO *joined* the alleged conspiracy or agreed to conspire with any of the Defendants or 200-plus other insurance companies[5] in Oregon.[6] *See A&E* January 2015 Order at 17 ("To start with, aside from conclusory allegations that it exists, the Plaintiffs offer no details at all in the Amended Complaint about the alleged agreement, such as how the Defendants entered into it, or when."). First, there are no allegations that GEICO knew of the purported conspiracy's general scope or purpose; Plaintiff fails to allege that GEICO ever discussed or heard about the purported conspiracy. *See* Compl. ¶¶ 133, 152, 154-155 (alleging that Defendants generally engaged in the putative conspiracy, but *not* alleging facts tending to prove that GEICO knowingly or intentionally joined the purported conspiracy, or acted interdependently with the purported coconspirators). Second, Plaintiff fails to allege any facts tending to prove GEICO's purported intent to advance the unlawful purpose of the purported conspiracy. *See id.*; *A&E* January 2015 Order at 20. Third, Plaintiff does not allege that GEICO and any of the Defendants took a single interdependent act for a common purpose. *A&E* January 2015 Order at 20. Indeed, the only fair reading of Plaintiff's

---

[5] *See* Compl., Ex. 1.

[6] The Supreme Court in *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ruled that in a Section 1 claim, which is the only provision cited by Plaintiff, it is fundamental that a plaintiff establish an agreement between two or more persons to restrain trade and that unilateral or independent conduct is not actionable. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986), the Court held that antitrust claimants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary" where "the factual context renders [the] claim implausible," such as where the number of competitors is high and "the claim is one that simply makes no economic sense."

Complaint is that GEICO did nothing whatsoever, or, if it acted, GEICO acted entirely independent of the other Defendants.  In sum, Plaintiff's allegations of a conspiracy are conclusory at best, and any allegations that GEICO knowingly and intentionally joined a conspiracy are nonexistent.  Plaintiff therefore fails to state a valid antitrust conspiracy claim as a matter of law.

## IV.   PLAINTIFF FAILS TO ALLEGE THE REQUIRED SUBSTANTIVE ELEMENTS OF ITS ANTITRUST CLAIMS

Count One of the Complaint is subject to the rule of reason because Plaintiff does not allege facts tending to prove that the alleged conduct is the type of hard core pricing conduct that is subject to the *per se* illegal test.  *Iqbal,* 556 U.S. 679-80; *see also Texaco Inc. v. Dagher,* 547 U.S. 1, 5 (2006) (explaining the rule of the reason is the presumptive standard); *Cha-Car, Inc. v. Calder Race Course, Inc.,* 752 F.2d 609, 613 (11th Cir. 1985) ("The *per se* doctrine should not be extended to restraints of trade that are of ambiguous effect; any departure from the rule of reason standard must be based upon demonstrable anticompetitive economic effect, rather than formalistic line drawing.").  Here, as alleged, the purported pricing conduct is efficiency-enhancing and lowers costs that are used to set premiums charged to consumers.  Compl. ¶ 155.  Boycott claims are also subject to the rule of reason when plausible justifications exist, as do with respect to Plaintiff's Count Two.  *Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.,* 472 U.S. 284, 295-97 (1985)[7]; *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,* 551 U.S. 877, 881-82 (2007); *Am. Needle v. Nat'l Football League,* 560 U.S. 183, 202-04 (2010).

Under the rule of reason, Plaintiff must allege plausible facts that tend to prove:

1.     A product or service market that is relevant for antitrust purposes;

2.     A geographic market that is relevant for antitrust purposes;

---

[7]  The Supreme Court applied the rule of reason to a group boycott because it "would seem to be designed to increase economic efficiency and render markets more, rather than less, competitive" by, among other things, reducing costs.  472 U.S. at 295 (internal quotation marks omitted).  The same is true here.  Plaintiff alleges that the purpose of the alleged group boycott is to reduce costs, by capping the maximum prices paid.  Complaint ¶ 163.

3.      Market power in the relevant product/service and geographic markets;

4.      Barriers to entry;

5.      Wrongful conduct resulting in anticompetitive effect (*i.e.*, conduct that raises prices above competitive levels, suppresses payments below competitive levels, or suppresses output below competitive levels);

6.      The anticompetitive effects outweigh the pro-competitive benefits;

7.      Antitrust injury or standing (*i.e.*, plaintiff has suffered injury caused by the anticompetitive conduct); and

8.      Damages.

*See, e.g.*, *Image Technical Servs., Inc. v. Eastman Kodak, Inc.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("*Kodak*"); *Levine v. Cent. Florida Med. Affiliates, Inc.*, 72 F.3d 1538, 1552-55 (11th Cir. 1996) (stating the rule of reason test more generally); *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US LLC*, No. 8:10-CV-2008-T-33TGW, 2011 WL 3035226, at *9-10 (M.D. Fla. July 25, 2011) (same); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-72 (same).  Plaintiff fails to plead facts in support of these elements.

## A.     No Plausible Facts Supporting a Product/Service Relevant Market

In a rule of reason case, an antitrust claimant must allege plausible facts that tend to prove a relevant product or service market.  *See, e.g.*, *id.* at 1071-72; *Levine*, 72 F.3d at 1551; *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417-19 (5th Cir. 2010) (affirming dismissal based on conclusory and implausible relevant market allegations).  A product or service market that is relevant for antitrust purposes amounts to the "commodities reasonably interchangeable by consumers for the same purpose . . . , monopolization of which may be illegal."  *Moecker v. Honeywell Int'l, Inc.,* 144 F. Supp. 2d 1291, 1302-03 (M.D. Fla. 2001) (quoting *U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)).  "To define a market is to identify producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services."  *Levine*, 72 F.3d at 1552 (quoting 2A Phillip E. Areeda et al., *Antitrust Law* ¶ 530a at 150); *see also U.S. v. Rockford Memorial Corp.*, 717 F. Supp. 1251, 1261 (N.D. Ill. 1989) ("The geographic 'market [should

be in an] area in which the seller operates, and to which the purchaser can practicably turn for supplies.'") (quoting *U.S. v. Philidelphia Nat'l Bank*, 374 U.S. 321, 359 (1963)); *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993) (holding that a relevant product market is primarily a process of describing those groups of producers which, because of the similarity of their products, have the ability – actual or potential – to take significant amounts of business away from each other). A relevant market includes all existing firms that would compete in the event of a small but significant, non-transitory price increase. *Id.*; *Kodak*, 125 F.3d at 1203 ("Without a proper definition of the relevant market, it is impossible to determine a party's influence over that market."). Plaintiff alleges no facts tending to prove any relevant product or service market and fails even to make conclusory allegations of a relevant product or service market.

### B.     No Plausible Facts Supporting a Relevant Geographic Market

Similarly, an antitrust claimant must allege plausible facts that tend to prove a relevant geographic market. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 711-12 (11th Cir. 2014). A relevant geographic market is the geographic area of effective competition, including firms that would enter in the event of a price increase. *See, e.g.*, *Standard Oil Co. v. United States*, 337 U.S. 293, 299 n.5 (1949). Again, Plaintiff alleges no facts tending to prove a relevant geographic market. Arguably, the Complaint attempts to suggest that the market at issue is the entire State of Oregon. Relying on an arbitrary state line or company marketing area, however, is insufficient as a matter of law. *See Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 626-27 (5th Cir. 2002) ("[T]he economic significance of a geographic area does not depend upon singular elements such as population, income, ***political boundaries***, or geographic extent, but rather upon the relationship between these elements and the characteristics of competition in the relevant product market within a particular area.") (emphasis added) (internal quotation marks omitted). There are reasons that the relevant geographic market

might be smaller (*e.g.*, Portland versus Eugene), or overlap two states (*e.g*., Portland, Oregon and Vancouver, Washington), or might be nationwide (*e.g*., marketing and advertising). Establishing a relevant geographic market is entirely Plaintiff's burden, and Plaintiff fails to allege any facts that establish a relevant geographic market or exclude other markets. *See*, *e.g.*, *id.* at 630-33 (affirming dismissal under Rule 12(b)(6) for failure to plead a plausible relevant geographic market); *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1071-74.

> **C.**     **Plaintiff's Market Share Allegations Are Immaterial under *Twombly and Iqbal***

Under the rule of reason, Plaintiff must allege the putatively conspiring Defendants have market power in a properly-alleged relevant market. *See*, *e.g.*, *Levine*, 72 F.3d at 1538, 1551; *Spanish Broad. Sys. of Fla.*, 376 F.3d at 1073. High market share – absent proper market definition – does not tend to prove market power and is inconsequential. Fed. R. Evid. 104(b), 401; *see Cont'l Airlines v. United Airlines*, 277 F.3d 499, 509 (4th Cir. 2002) (absent market power in a relevant market, any purported restraint of trade does not implicate Section 1 of the Sherman Act). Again, Plaintiff alleges no facts tending to prove market power.

> **D.**     **No Allegations of Barriers to Entry**

Even if market share were meaningful (because Plaintiff had alleged relevant product/service and geographic markets or otherwise, which Plaintiff has not done), Plaintiff's failure to allege barriers to entry in the relevant market is yet another reason that Counts One and Two fail. *See, e.g.*, *Levine*, 72 F.3d at 1551, 1555; *Moecker v. Honeywell Int'l Inc*., 144 F. Supp. 2d 1291, 1308 (M.D. Fla. 2001). A barrier to entry is any market feature capable of constraining the normal operation of a relevant market to the extent that the relevant market is unlikely to be self-correcting over time. *Kodak*, 125 F.3d at 1208. But, if the purported barrier to entry does not prevent self-correction over time, then the claimant's antitrust claim fails. *Id.* To succeed in establishing barriers to entry under the rule of reason, Plaintiff must also show that new competitors (or existing competitors with excess capacity) seeking to enter

the relevant market face high market barriers to entry. *See, e.g.*, *id.* at 1207-08; *Lockheed Martin Corp. v. Boeing Co.*, 390 F. Supp. 2d 1073, 1078, 1079, n.6 (M.D. Fla. 2005)

Plaintiff's failure to allege barriers to entry is incurable in this instance, particularly given the fact that Plaintiff concedes that there are more than 200 companies already providing automobile insurance in Oregon. Compl. ¶¶ 2-68, Ex. 1. Where barriers to entry are low – that is, where new firms could readily enter or existing firms could readily expand capacity – a large market share does not indicate market power. *See Nat'l Bancard Corp. v. VISA USA Inc.*, 596 F. Supp. 1231, 1259 (S.D. Fla. 1984) (defendant would lack market power, even if it had a large market share, where there were no significant barriers to entry); *Reazin v. Blue Cross and Blue Shield of Kan., Inc.*, 899 F.2d 951, 968 (10th Cir. 1990) (substantial market power can persist only if there are significant and continuing barriers to entry). After all, if barriers to entry were high, so many companies could not be providing insurance services in Oregon.

**E.   No Allegation that the Purported Restraints, Even If True, Result in Anticompetitive Effects and that the Anticompetitive Effects Outweigh the Procompetitive Benefits**

In Count One, Plaintiff fails to allege how the particular pricing conduct (*i.e.*, ensuring lower prices) might be anticompetitive. *See, e.g.*, *Aspen Skiing v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985); *Levine*, 72 F.3d at 1551 ("Rule of reason analysis requires the plaintiff to prove [ ] an anticompetitive effect of the defendant's conduct on the relevant market . . . ."). The anticompetitive effects element cannot be met by simply alleging a restraint – particularly when that restraint is merely lower prices. Instead, Plaintiff must allege how this purported restraint is anticompetitive; it has not. Low prices generally do not raise antitrust concerns but, instead, are precisely the type of conduct the antitrust laws are designed to promote. *See, e.g.*, *Matsushita Electric*, 475 U.S. at 594. Low prices typically indicate competition, not the lack of it. *See, e.g.*, *id.* Indeed, Plaintiff's own allegations state that there are more than 200 competitors engaging in inter-brand competition and prepared to

-15-

capitalize on any anticompetitive conduct by GEICO.  Compl. ¶¶ 2-68, Ex. 1.  Plaintiff has only alleged a purported restraint, but it has not alleged plausible facts tending to prove that the purportedly illegal restraint is anticompetitive.

In Count Two, Plaintiff alleges a boycott of it – as supplier, not competitor, of the Defendants.  In *Northwest Wholesale Stationers,* the Supreme Court held that a group boycott "does not necessarily imply anticompetitive animus and thereby raise a probability of anticompetitive effect."  472 U.S. at 295.  Since that decision, courts closely scrutinize group boycott allegations for the adequacy of anticompetitive effects allegations.   Indeed, the Supreme Court held that rule of reason, as opposed to *per se*, analysis applies to agreements by buyers "to purchase goods and services from one supplier rather than another," even when there is "no legitimate business reason for that purchasing decision."  *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998).  The Complaint repeatedly alleges a strong procompetitive benefit – lower prices – and that the purpose of the alleged boycott was to ensure these lower prices.  Compl. ¶ 163.  Because Plaintiff does not allege any cognizable anticompetitive effects whatsoever, Plaintiff has not adequately alleged that the procompetitive benefits are outweighed by anticompetitive effects.  *Nw. Wholesale Stationers*, 472 U.S. at 296.

## F.      Plaintiff Has Not Adequately Alleged Antitrust Injury

Finally, Plaintiff has not made sufficient allegations of antitrust injury.  A claimant must show an "antitrust injury" to have standing to bring a Sherman Act claim.  *See, e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540-42 (1983).  Because the antitrust laws protect competition and not competitors, many injuries – including direct injuries – suffered by plaintiffs are not cognizable under the antitrust laws.  *See*, *e.g.*, *id.; Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1299-300 (M.D. Fla. 2002) ("The purpose of the Sherman Antitrust Act is to protect competition, not individual competitors."); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*,

864 F.2d 1409, 1413 (7th Cir. 1989) ("The Sherman Act protects competition, not competitors, and does not reach conduct that is only unfair, impolite, or unethical.").  As a result, Plaintiff must allege more than mere conclusory statements that it suffered injuries from the anticompetitive effects of purported restraints, and not simply injuries from Defendants' alleged goal of paying lower prices.  Plaintiff fails to do so.  *See* Compl. ¶ 158.

## V.     PLAINTIFF'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW

### A.     Plaintiff's *Quantum Meruit*/Unjust Enrichment Claim Fails For The Same Reasons It Failed In *A&E* Because The Elements Relied On By This Court In *A&E* Are Functionally Equivalent To Oregon Law

In dismissing plaintiffs' unjust enrichment and *quantum meruit* claims in *A&E*, this Court held that plaintiffs failed to demonstrate they had "conferred a benefit upon the Defendants."  *A&E* January 2015 Order at 9.  Application of Oregon law requires this Court reach the same conclusion in this case.  Under Oregon law, "[t]he elements of the claim are a benefit conferred, awareness by the recipient that a benefit has been received, and judicial recognition that, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it."[8]  *Safeport, Inc. v. Equip. Roundup & Mfg., Inc.*, 60 P.3d 1076, 1085 (Or. Ct. App. 2002) (citing *Jaqua v. Nike, Inc.,* 865 P.2d 442 (Or. Ct. App. 1993)).

Plaintiff has not conferred a benefit on GEICO.  Just as in *A&E*, the Complaint here alleges that "Plaintiff has performed valuable services and expended material resources . . . . [that have] benefitted Defendants and Defendant's (sic) insured/claimants . . . ."  Compl. ¶ 135.  As this Court observed, however, while "[t]he repairs at issue obviously provided a benefit to owners of the vehicles . . . . the only effect of such a repair on the insurance company is the incurring of an obligation to pay for it."  *A&E* January 2015 Order at 9.  Thus, Defendants' "retention of its [own] money is certainly not something that has been conferred

---

[8] Because the elements of *quantum meruit* and unjust enrichment are the same, GEICO analyzes them together. See *Wilson v. Gutierrez*, 323 P.3d 974, 978 (Or. Ct. App. 2014).

upon it by the repair shop." *A&E* January 2015 Order at 10.  Oregon law requires dismissal for the same reason.

Further, Plaintiff has not alleged the required injustice.  To recover in quasi-contract, the services must be rendered with an expectation of payment. *Verizon Nw., Inc. v. Main St. Dev., Inc.*, 693 F. Supp. 2d 1265, 1276 (D. Or. 2010) ("For an injustice to be found, one of three things must be true: (1) the plaintiff had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of security of person and property would be defeated by nonpayment.") (internal quotation marks omitted).  The Complaint alleges the Defendants communicated what they were willing to pay for services before they were rendered so there can be no expectation of further payment.  Compl. ¶¶ 82, 105.  Plaintiff alleges Defendants communicated what they were willing to pay for services before they were rendered, Plaintiff knew exactly what Defendants would pay and decided to perform.  *See*, *e.g.*, Compl. ¶¶ 82, 104-105 (alleging State Farm's "market rate" is the maximum Defendant's will pay, whether or not a given shop is a DRP shop); ¶ 107 (explaining Defendants' alleged reimbursement policies relating to repair parts); ¶ 113 (explaining Defendants' alleged reimbursement policies for materials).  "Plaintiff[] could not, under any level of reasonableness, have expected to be paid more than what [it] received." *Indiana Autobody Ass'n v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-6001-Orl-31TBS, Doc. 150 (Mar. 30, 2015) (dismissing an identically pleaded *quantum meruit* claim).

In addition, to the extent Plaintiff alleges it entered into agreements with GEICO, it could not maintain *quantum meruit*/unjust enrichment claims because its rights are limited to the terms of the contract.  *See*, *e.g.*, *Ken Hood Const. Co. v. Pacific Coast Const., Inc.*, 126 P.3d 1254, 1255-56 (Or. Ct. App. 2006) (holding *quantum meruit* does not apply when a contract exists because the parties' rights are limited to the terms of the contract); Compl. ¶¶ 74-75 (alleging that Plaintiffs entered "agreements" with Defendants (including, presumably, GEICO)).

**B.     Plaintiff's Claim For Quasi-Estoppel Fails Because, As In Florida, Quasi-Estoppel Is Not A Cause Of Action In Oregon**

Quasi-estoppel is not a cause of action in Oregon, and may not even be available as a defense.  *See Day v. Advanced M & D Sales, Inc.*, 86 P.3d 678, 685 (Or. 2004) ("Assuming, without deciding, that quasi-estoppel is available to a litigant in Oregon, we decline to apply it in the present case . . . ."); *see also DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1062 (D. Or. 2011) (holding that equitable estoppel is not a cause of action, rather, it is a defense).  Quasi-estoppel has only ever been applied in defense of tax cases in Oregon in a form that is inapplicable to Plaintiff's claim.  *See, e.g.*, *Stancorp Fin. Grp., Inc. v. Dep't of Revenue*, No. TC-MD 070881B, 2011 WL 3654427, at *11 (Or. T.C. Aug. 18, 2011) (discussing the elements of quasi-estoppel in taxing context); *Shanafelt v. United States*, No. 96-1295-RE, 1997 WL 810907, at *3-4 (D. Or. Oct. 8, 1997) (same).  This Court should not create new Oregon law where the Oregon Supreme Court declined to do so.

Even if quasi-estoppel existed in Oregon (which it does not), Plaintiff does not allege facts to support the elements of what it claims is the cause of action.  Plaintiff's quasi-estoppel claim alleges that Defendants sometimes rely on databases that provide "average costs associated with particular types of repairs to create estimates" that "include the ordinary and customary repairs, repair time (labor) and materials necessary to return a vehicle to its pre-accident condition" and sometimes do not.  Compl. ¶¶ 109-110, 139-142.  Plaintiff does not allege GEICO took a contradictory position as to any particular repair or procedure.  Moreover, Plaintiff also alleges that "[t]hese databases and the estimates they generate are accepted within the industry as reliable starting points, **subject to the shop's expert opinions**."  Compl. ¶ 109 (emphasis added).  Plaintiff asks this Court to find that Defendants took a contradictory position by only sometimes relying upon databases that Plaintiff only sometimes relies upon.  Plaintiff has no basis to support its "quasi-estoppel" claim, which is not even recognized under Oregon law.

**C.     Plaintiff Fails To Adequately Plead A Cause Of Action For Tortious**

**Interference With Prospective Economic Advantage**

Although Florida and Oregon law are not the same, Plaintiff's claim for tortious interference with prospective economic advantage fails for many of the same reasons identified by this Court in *A&E*.  In Oregon, a plaintiff must demonstrate: (1) the existence of a valid business relationship, which could be either a contract or a prospective economic advantage; (2) intentional interference with the relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relationship; and (6) damages.  *Volm v. Legacy Health Sys., Inc.*, 237 F. Supp. 2d 1166, 1176 (D. Or. 2002); *Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp*, 891 P.2d 639, 650-51 (Or. 1995).  Plaintiff must allege that GEICO knew of Plaintiff's prospective relationship and that the interference was intentional.  *FLIR Systems, Inc. v. Sierra Media, Inc.*, No. CV-10-971-HU, 2011 WL 1832806, at * 7 (D. Or. May 10, 2011); *United Employer Benefit Corp. v. Dep't of Ins. and Fin. of the State of Or.*, 892 P.2d 722, 728 (Or. Ct. App. 1995); *Glubka v. Long*, 837 P.2d 553, 555 (Or. Ct. App. 1992); *see also Nw. Natural Gas Co. v. Chase Gardens, Inc.*, 982 P.2d 1117, 1124 (Or. 1999) (a plaintiff must prove a "defendant intentionally interfered with his business relationship") (internal quotation marks omitted).

As in Florida, Oregon requires Plaintiff to specify the business relationship with which GEICO allegedly interfered.  *Evans v. Sirius Computer Solutions, Inc.*, No. 3:12-CV-46-AA, 2012 WL 1557294, at *3 (D. Or. May 1, 2012) (failure to allege a business relationship with potential customers requires dismissal); *FLIR*, 2011 WL 1832806 at * 7 (the possibility that a person might buy a product in the future is not enough to create a business relationship); *see also A&E* January 2015 Order at 14 (holding that "no cause of action exists for tortious interference with a business's relationship to the community at large").  Plaintiff's allegations here are nearly identical to those made in *A&E* and also fail to demonstrate "actual or identifiable understandings or agreements" between Plaintiff and GEICO's insureds.  *See*

*A&E* January 2015 Order at 14.  The Complaint alleges unspecified insurers "direct[ed]" unspecified insureds, who might conceivably have considered Plaintiff for their auto repair work, to other shops to get cheaper prices but fails to describe any specific relationship between GEICO and such insureds.  Similarly, Plaintiff does not plead plausible facts showing GEICO (or any Defendant) *knew* of any specific relationship or *intended* to cause the breach or termination of the relationship.[9]  Compl. ¶¶ 144-145.  Because Plaintiff does not identify specific third parties with whom valid, enforceable contracts or prospective business relationships existed, let alone show that GEICO knew of such relationships, its tortious interference claim should be dismissed.  *FLIR*, 2011 WL 1832806 at *8.

Like Florida, Oregon also requires the interference to be "unjustified" or "improper" to support a tortious interference claim, although the tests differ.  Florida courts look at whether improper methods were used to interfere.  *A&E* January 2015 Order at 13-14 (identifying certain improper methods).  In Oregon, the interference must be wrongful by some measure beyond the interference itself.  *Chase Gardens*, 982 P.2d at 1124.  Plaintiff, therefore, must allege that GEICO interfered for an improper purpose rather than a legitimate one or used improper means.  *Uptown Heights*, 891 P.2d at 647; *Glubka*, 837 P.2d at 555.  Plaintiff does not allege sufficient facts that, if taken as true, support Plaintiff's conclusory allegation that GEICO interfered for an improper purpose or used improper means.  *See* Compl. ¶¶ 144-145.

In Oregon, where a party acts pursuant to a contract in circumstances contemplated by

---

[9] Plaintiff's only allegation even arguably related to Defendants' intent, found in a section titled "Intentional Nature of Defendants' Conduct," is based on a 1963 consent decree purportedly entered into in *United States vs. Association of Casualty and Surety Companies,* et al., Docket No. 3106 in the Southern District of New York.  Compl. ¶¶ 129-133.  As this Court already held in *A&E,* "none of the parties in this case were parties to the 1963 case, and the Court does not find the 1963 consent decree to have any relevance to the instant case." *A&E* January 2015 Order at 4, n.6; *accord Mosley v. GEICO Ins. Co.*, Cause No. 3:13CV161-LG-JCG, 2014 WL 7882149, at *2, n.2 (S.D. Miss. Dec. 16, 2014) ("[P]laintiffs have not demonstrated how they would have standing to enforce the Consent Decree, or that any of the defendants were parties to that litigation or are otherwise bound by the Consent Decree. Moreover, the Consent Decree was entered by the United States District Court for the Southern District of New York, and this Court would not have jurisdiction to enforce it."). The 1963 consent decree cannot apply here.

that contract, improper purpose cannot serve as the sole basis for a tortious interference claim. *Uptown Heights*, 891 P.2d at 647. Defendants are not a stranger to the alleged relationship between Plaintiff and its theoretical customers, but rather are allegedly acting pursuant to the terms of an insurance policy issued to their insureds. *See*, *e.g.*, Compl. ¶¶ 72, 81 (referencing Defendants' obligation to pay for repairs pursuant to policies). In such a scenario, Defendants have a financial interest in the relationship between their insured and Plaintiff. *See A&E* January 2015 Order at 13. Thus, Plaintiff cannot sustain a claim for tortious interference based solely on improper purpose. *Uptown Heights*, 891 P.2d at 647; *see also Wieber v. FedEx Ground Package Sys., Inc.*, 220 P.3d 68, 76-77 (Or. Ct. App. 2009) (finding FedEx was not a stranger to plaintiff's relationship with its customers when it was inextricably linked to that relationship through its own contract with plaintiff); *A&E* January 2015 Order at 13 (noting that in Florida, insurance companies are privileged to interfere with the relationship between the insured and a repair shop).

Even if Plaintiff could bring a claim based solely upon "improper" purpose in this circumstance, Plaintiff alleges that Defendants, including GEICO, had a legitimate purpose – cost control – for their alleged actions. *See* Compl. ¶ 73 (alleging Defendants sought to "control and depress automobile damage repair costs"), ¶ 145 (alleging Defendants sought to "direct potential customers of the Plaintiff to other vendors who would comply with the maximum price ceilings"). Plaintiff's conclusory allegations that Defendants sought to "punish the plaintiff" (Compl. ¶ 145) are insufficient to state a claim based on improper purpose. *Conklin v. Karban Rock, Inc.*, 767 P.2d 444, 449 (Or. Ct. App. 1989); *Int'l Longshore and Warehouse Union v. ICTSI Or. Inc.*, 15 F. Supp. 3d 1075, 1109 (D. Or. 2014).

"'Improper means' must be independently wrongful by reason of statutory or common law, and include 'violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood.'" *Douglas Med. Ctr., LLC v. Mercy Med. Ctr.*, 125 P.3d 1281, 1289 (Or. Ct. App. 2006) (quoting *Conklin*, 767 P.2d at 448); *Chase*

*Gardens*, 982 P.2d at 1124 (holding that "the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or, perhaps, an established standard of a trade or profession").  Plaintiff's reliance upon Or. Rev. Stat §§ 746.280, 646.608(e), and/or the Sherman Act fails to establish improper means because Plaintiff fails to allege a violation of any of those statutes.  *See* Compl. ¶ 144.

Plaintiff's group-pled conclusory allegations do not support a violation of Or. Rev. Stat. § 746.280 because Plaintiff has not alleged facts that establish GEICO required anyone to make repairs at a particular shop as a condition for recovery by the insured or did anything else to violate the statute.  *See* Compl. ¶¶ 124-128, 144-145.  In fact, Plaintiff concedes that Defendants do not violate this statute.  *See* Compl. ¶ 124 (alleging Defendants avoid violating this law).  In any event, Oregon law provides a remedy for a violation of § 746.280 only to an insured, not a body shop.  Or. Rev. Stat § 746.300.

Plaintiff cannot rely upon Or. Rev. Stat. § 646.608(e) or the Sherman Antitrust Act either.  As discussed below, § 646.608 does not apply to insurance goods or services and, even if it did, Plaintiff is not a consumer and therefore has no private right of action under the statute.  *See infra* Part V(D).  As discussed above, Plaintiff failed to allege a plausible violation of the Sherman Act.  *See supra* Parts III, IV.  Allowing Plaintiff's tortious interference claim to proceed premised on failed alleged statutory violations would impermissibly subvert the statutory schemes by using tortious interference as a "backdoor" regulation.  *See Kovac v. Crooked River Ranch Club v. Maintenance Ass'n*, 63 P.3d 1197, 1201 (Or. Ct. App. 2003) (because antitrust claim failed, tortious interference with a business relationship based on the same conduct also failed); *Willamette Dental Group, P.C. v. Or. Dental Serv. Corp.*, 882 P.2d 637, 643 (Or. Ct. App. 1994) (permitted competitive conduct cannot be punished as tortious interference because "such common law 'back-dooring' would subvert the function of antitrust law"); *Ahern v. Or. Pub. Employees Union*, 988 P.2d 364, 366 (Or. 1999) (holding court had no jurisdiction over tortious interference claim where the

improper means was based on unfair labor practices because the Employment Relations Board has exclusive jurisdiction over such practices).[10]

Plaintiff's claim also fails because Plaintiff's allegation that Defendants misrepresent facts sounds in fraud and is not made with the specificity required by Rule 9(b).  *See* Compl. ¶¶ 124-128, 144; *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x 882, 884 (11th Cir. 2014) (citing *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064–65 (11th Cir. 2007) (holding Rule 9(b) applies to claims that "sound in fraud"); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (holding that Rule 9(b) applies to a tortious interference claim based on alleged fraudulent conduct); *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1320 (S.D. Fla. 2013) (applying Rule 9(b) to allegations of fraudulent conduct underlying tortious interference claim); *Marks v. Struble*, 347 F. Supp. 2d 136, 147 (D.N.J. 2004) (same).

### D.     Plaintiff Do Not Have Standing To Bring An Oregon Unfair Trade Practices Act ("OUTPA") Claim

OUTPA is "first and foremost a consumer protection statute."  *Volm*, 237 F. Supp. 2d at 1175 (internal quotation marks omitted).  It does not provide a cause of action for commercial transactions.  *Investigators, Inc. v. Harvey*, 633 P.2d 6, 8 (Or. Ct. App. 1981) (OUTPA applies to consumer transactions, not commercial ones); *Ave. Lofts Condo. Owners Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010, 1015 (D. Or. 2014) (summarizing state and federal case law).  Nor does it "provide a cause of action to a non-consumer that is wholly derivative of injury to consumers."  *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 185 F.3d 957, 968 (9th Cir. 1999).  Rather, businesses complaining of unfair trade practices must seek relief through the antitrust law.  *CollegeNet,*

---

[10] Even if Plaintiff could maintain a tortious interference claim premised on a violation of § 646.608, Plaintiff's Complaint specifically cites subsection (e), which says it is an unlawful practice if a person "[r]epresents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have." Nowhere does Plaintiff allege facts that fit under this statutory prohibition.

*Inc. v. Embark.com, Inc.*, 230 F. Supp. 2d 1167, 1175 (D. Or. 2001).  Plaintiff's OUTPA claim fails because it is not a consumer of GEICO's services.  *CollegeNet*, 230 F. Supp. 2d at 1174; *Roberts v. Legacy Meridian Park Hosp., Inc.*, No. 3:13-CV-01136-SI, 2014 WL 294549, at * 11 (D. Or. Jan. 24, 2014); *see* Compl. ¶ 70 ("Plaintiff is in the business of recovery and/or repair of motor vehicles . . . ."), ¶ 72 (Plaintiff does business with Defendants' policyholders).

Plaintiff's OUTPA claim also fails because OUTPA does not apply to insurance transactions.  Or. Rev. Stat. § 646.605(6)(a) ("'Real estate, goods or services' . . does not include insurance").  In fact, insurance industry trade practices are governed by an entirely separate title Oregon Code.  *See*, *e.g.*, Or. Rev. Stat. § 746.240 (practices detrimental to free competition); § 746.230 (unfair claim settlement practices).  Moreover, Plaintiff's claim rests on alleged false comments, but does not allege facts relating to these false comments with the specificity required by Fed. R. Civ. P. Rule 9(b).  *See*, *e.g.*, *Cordell Consultant*, 561 F. App'x at 884; *Borsellino*, 477 F.3d at 508.

GEICO also asks this Court to find there was no "objectively reasonable basis" for Plaintiff to bring this action and award GEICO is attorneys' fees and costs.  *See* Or. Rev. Stat. § 646.638(3) (courts "may award reasonable attorney fees and costs . . . to a prevailing defendant only if the court finds that an objectively reasonable basis for bringing the action . . . did not exist"); *CollegeNet*, 230 F. Supp. 2d at 1174 (finding "little difficultly" in concluding that disparagement claims under OUTPA can only be brought by consumers).

## VI.    <u>CONCLUSION</u>

GEICO requests that Plaintiff's Complaint be dismissed for the reasons set forth above, together with such further relief as the Court deems proper.

DATED this 22nd day of April, 2015.

SNELL & WILMER L.L.P.

By: */s/ Dan. W. Goldfine*
Dan W. Goldfine
Joshua Grabel
Ian M. Fischer
Jamie L. Halavais
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602-382-6000
Facsimile: 602-382-6070
Email: dgoldfine@swlaw.com
jgrabel@swlaw.com
ifischer@swlaw.com
jhalavais@swlaw.com

Attorneys for GEICO General Insurance
Company, GEICO Indemnity Company, and
GEICO Casualty Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of April, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

*/s/ Dan W. Goldfine*
Dan W. Goldfine

20507706